# Donehoo *v.* Johnson.

*Statutory Action of Ejectment.*

1. *Latent ambiguity; admissibility of parol evidence in aid of description of premises in a conveyance.*—In the case of a latent ambiguity in the description of land in a conveyance, parol evidence may be introduced to show the identity of the subject matter of the conveyance, and where the description is by metes and bounds, parol evidence of the situation and locality of the premises and their identity, according to the description in the conveyance is admissible; but parol evidence cannot be received to show that the mistake or error was made in the description of the premises or to alter or vary the premises as specified, or to establish another and different boundary for that expressed in the deed.

2. *Same; when not shown to exist and when parol evidence not admissible.*—When in a deed the lands conveyed are described by metes and bounds and one of the boundary lines is described as

[Donehoo v. Johnson.]

running from a stake in a designated line according to the Government survey, "west with said line to a stake at the *northwest* corner of the southeast quarter of said section 21," there is no latent ambiguity in such conveyance as to said boundary line, and parol evidence is inadmissible to show that there was in fact no stake at the northwest corner of said quarter section, but that there was a stake at the northeast corner thereof, and that the description should have read, in order to convey the lands intended, as running west with said line to a stake at the *northeast* corner.

3. *Same; same; action of ejectment.*—In an action of ejectment, where the defendant claims the lands sued for as the purchaser at a sale made by a register under a decree of the chancery court, and it is shown that the plaintiff and the defendant derive title from the same original owner, who claimed under a deed which, though so intended, did not describe the land sued for, and in the bill and decree of the chancery court ordering the sale, and in the deed made by the register, the land was described as in the original deed to the common source of title, the pleadings and the decree in the chancery suit and the deed of the register to the defendant are inadmissible in evidence; and parol evidence that there was a mistake in the description in the original deed, in the bill and in the decree and in the register's deed, and that the lands sued for were included therein is also inadmissible.

4. *Ejectment; admissibility of statements by surveyor.*—In an action of ejectment, where the defendant claims under a register's deed, a county surveyor, who surveyed the lands described in said deed and made a map thereof, which map was produced and read in evidence, after describing the survey made by him and stating the manner in which it was made, is competent to testify that the deed of the register to the defendant did not include or describe the lands sued for in said action.

5. *Same; estoppel.*—In an action of ejectment, where the plaintiff claims title to certain lands by descent, the facts that her ancestor sought to convey the lands sued for, together with other lands, to the plaintiff's husband, who went into possession of said lands, and that upon his death the plaintiff, as administratrix of his estate, took possession of the lands sued for together with the others, as belonging to her husband's estate, and afterwards delivered all of said lands to her successor in the administration, does not estop her from claiming title to the lands sued for, it being shown that such lands were not included in the deed to her husband.

6. *Same; effect of estoppel in pais.*—An estoppel *in pais* can not operate to divest the legal title to lands vested by descent, and can not defeat a recovery in ejectment founded upon the legal title in the plaintiff.

7. *Same; when defendant can not set up outstanding title.*—A defendant in ejectment, who claims title to the lands sued for from the same source as does the plaintiff, can not set up an outstanding title in a third person to defeat recovery.

8. *Same; competency of defense.*—Where the defendant in an action of ejectment claims title as purchaser at a sale under a decree vacating a conveyance of said lands as fraudulent, he can not defend under said deed of conveyance, or on account of the adverse possession of the grantee claiming under said deed.

APPEAL from the Circuit Court of Blount.

Tried before the Hon. J. A. BILBRO.

This was a statutory action of ejectment brought by the appellee, Mary P. Johnson, against the appellant, F. P. Donehoo, to recover a certain tract of land specifically described in the complaint. The facts of the case necessary to an understanding of the decision on the present appeal, are sufficiently stated in the opinion.

There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

INZER & WARD and JOHN DICKINSON, for appellant. The court erred in allowing the county surveyor to testify that the lands sued for were not in the deed under which the defendant claimed.—*Clements v. Pearce,* 63 Ala. 284; *Pollard v. Maddox,* 28 Ala. 321.

The court erred in not allowing the defendant to show by parol evidence that the lands sued for were intended to be included in the several conveyances, and were involved in the chancery suit, in which the sale at which the defendant purchased was ordered.—*Clements v. Pearce,* 63 Ala. 284; *Saltonstall v. Riley,* 28 Ala. 164; *Patch v. White,* 117 U. S. 860; *White v. Luning,* 13 Otto. 514; 2 Amer. & Eng. Encyc. of Law, title "Boundaries."

We cannot concede that oral testimony cannot be used for the purpose of contradicting a deed, but it is a familiar principle that parol evidence may be introduced to show the circumstances under which a deed is executed, and if the facts and circumstances show that the deed is a contradiction in itself, it is for the court to say

[Donehoo v. Johnson.]

what part of it may be taken and what rejected.—1 Greenleaf on Evidence, § 301; *Humes v. Bernstein*, 72 Ala. 546; *Baucum v. George*, 65 Ala. 259; *Sikes v. Shows*, 74 Ala. 382; Amer. & Eng. Encyc. of Law, title "Boundaries;" *White v. Luning*, 3 Otto. 514; *Patch v. White*, 117 U. S. 860.

The defendant should have been allowed to introduce the deed from John Reid and wife to S. H. C. Johnson, to show that all the parties who had anything to do with making or accepting deed to the John Reid farm used and recognized the same description as that contained in the bill and in this deed, to include the 80 acres with all the balance of the John Reid farm. The deed had a bearing on the question of the statute of limitations raised by the pleading in the case, and for that purpose should have gone to the jury, the evidence showing that after its execution S. H. C. Johnson exercised acts of ownership over the entire John Reid farm, including said 80 acres.—*Clements v. Pearce*, 63 Ala. 292; *Saltonstall v. Riley*, 28 Ala. 164; *McIver v. Walker*, 9 Cranch, 177: *Jenkins v. Cooper*, 50 Ala. 419; *Drake v. Goree*, 22 Ala. 409; 1 Greenl. Ev., § 301; 2 Amer. & Eng. Encyc. of Law, "Boundaries."

The proof was that S. H. C. Johnson went into possession of the Reid farm, including the 80 acres, Nov. 20th, 1873, and remained in the open and undisputed possession until his death in 1878, and his wife, the appellee, remained in possession after his death as his administratrix until she was succeeded in said administration by appellant as administrator *de bonis non*, and he so remained in possession until he purchased the same at the said chancery sale, and then held it as his own till this suit was brought on the 13th of February, 1896, thus making a continuous and undisputed holding of more than twenty-two years. The evidence shows that the appellee made no claim to said land in her own right during this time, and she recognized the right of the party holding said land until some time in the year 1896. True, up to the time of Johnson's death appellee lived on the land as his wife, and after his death as his widow and administratrix, but so far as the evidence discloses, during all this time she recognized the title of her said husband S. H. C. Johnson, to the land, turning

[Donehoo v. Johnson.]

the same over to appellant as the administrator *de bonis non* of her husband, who held it in that capacity until the register's sale.—*Chambers v. Ringstaff,* 69 Ala. 140 ; *White v. Luning,* 3 Otto 514 ; *Patch v. White,* 117 U. S. 860 ; 1 Greenl. Evidence, § 301.

R. T. ROBINETT and EMERY C. HALL, *contra.*—Where, in ejectment both parties claim from a common source, each is equally estopped from impeaching that title. *Pendley v. Madison,* 83 Ala. 484 ; *Stephenson v. Reeves,* 92 Ala. 582 ; *Matkin v. Marx,* 96 Ala. 501.

To constitute an adverse holding against the true owner, it must be shown that the true owner had knowledge of the adverse holding, or it must be so open and notorious as to raise a presumption of notice to him, the. equivalent of actual notice.—*Robinson v. Allison,* 97 Ala. 596 ; *Lucy v. Tenn. & Coosa R. R. Co.,* 92 Ala. 250 ; *Alexander v. Wheeler,* 69 Ala. 332 ; *Bishop v. Truett,* 85 Ala. 376.

The plaintiff and her husband resided together on the farm, before and after John Reid's death. There could be no adverse possession between husband and wife, while residing together on the land. Mary P. Johnson, after her father's death had the legal title to the land in suit. Where there is a mixed or joint possession, the possession in law follows the legal title.—*Gafford v. Strauss,* 89 Ala. 283 ; *Bell v. Bell,* 37 Ala. 536 ; 1 Amer. & Eng. Encyc. of Law, 250 ; Wood on Limitation, § 261.

There was no latent ambiguity in the description of the land. The testimony offered was not admissible. There was no error in giving the affirmative charge. *Donehoo v. Johnson,* 113 Ala. 126 : *Bromberg v. Yukers,* 108 Ala. 577.

DOWDELL, J.—The action disclosed by the record is a statutory real action, in the nature of ejectment, brought by the appellee, as plaintiff, against the appellant, as defendant, to recover the possession of the west half of the south-east quarter of section twenty-one, in a designated township and range, situate in Blount county, in this State. Both parties claimed title through one

John Reid, deceased; the plaintiff, as his only child and
heir at law, and the defendant, as purchaser at a sale
made by the register in chancery, under a decree of the
chancery court, condemning to sale for the satisfaction
of the creditor's demand, certain lands, claimed to in-
clude the land in controversy, as having been fraudu-
lently conveyed by Reid, and, at his instance, by Mur-
phree, his vendor, to one S. H. C. Johnson, Reid's son-
in-law, the then husband of the plaintiff, he having
since died, and to the plaintiff on a bill filed by a cred-
itor of Reid against his personal representative and
others. The purchase at this sale was made in 1890,
and this suit was commenced on 13th February,
1896. It appears from the evidence that one Asa R.
Murphree acquired the land in controversy, as a part of
a large tract, containing nine hundred acres, by purchase
in 1860, and went into the possession thereof; and that
in 1862, he sold to John Reid about six hundred acres of
the land so purchased, and placed him in posseesion. In
the deed which Murphree executed to Reid, in consum-
mation of this purchase, the lands were described by
metes and bounds, and in this description, by manifest
error or mistake in the draughtsman in describing the
boundary line on one side of the purchased lands, the
land in suit was omitted. The line as to which this mis-
take was made is described in the deed as running from
a stake in a designated line, according to the govern-
ment survey, "west with said line to a stake at the *north-
west* corner of the southeast quarter of said section
twenty-one," whereas it should have read, in order to
convey the lands which Reid purchased from Murphree,
as running west with said line to a stake at the *northeast*
corner of said quarter section. The effect of this mistake,
as we have said, was to entirely omit from the convey-
ance the land sued for. That this mistake was made is
manifest from the evidence, and we do not understand
that it is denied by counsel for either party. Reid, how-
ever, took possession of this part of the lands purchased,
as well as of the remainder, and continued therein,
claiming title thereto, for such a period, and under such
circumstances, as gave him title by adverse possession.
The deed made by the register in chancery to the defen-
dant, under which the latter claims, uses identically the

[Donehoo v. Johnson.]

same description as was used in the deed from Murphree to Reid, thus omitting from that deed the land in this suit. On the trial in the lower court, the defendant contended, and he renews that contention in this court, that, in the description or designation of the line above mentioned, there was a latent ambiguity, which he sought to explain by parol evidence, thereby attempting to stop the line at the northeast corner of said quarter section, and so include the lands sued for. In aid of this contention, he offered evidence tending to show that, in fact, there never was any stake at the northwest corner of this quarter section, but there was one at the northeast corner thereof; that when Murphree sold the lands to Reid, he showed him the boundaries of the land sold on the side on which the line in dispute was, and that the boundaries thus shown carried the line only to the northeast corner of the quarter section, which was in the woods, and not to the northwest corner, which was in a field; and that, in various ways, this line was recognized and treated by John Reid from the date of his purchase to the time of his death, in 1878, and after his death, by his widow, his son-in-law, and his daughter, the plaintiff in this suit, as stopping at the northeast corner, and not running to the northwest corner; the plaintiff acquiescing, by her acts and conduct, in this construction of this boundary line for several years after the defendant's purchase at the sale made by the register in chancery. This is the legal effect and clear purport of all the testimony offered on this point. Much of this testimony was allowed by the court without objection, and some of it was introduced by the plaintiff. The record of the proceedings in the chancery court in which the decree was entered under which lands were sold to the defendant, and the deed executed to the defendant by the register, were, however, on the objections of the plaintiff, excluded from the jury, on the ground, it is apparent, that these proceedings and the decree rendered therein, and the deed executed by the register, did not embrace the lands involved in this suit. The court, on the request of the plaintiff, gave the general affirmative charge in her favor; and to this ruling, and to the rulings in excluding from the jury the record and pro-

ceedings in the chancery suit, and the deed executed by the register, and to other rulings on the evidence, and to the refusal of the court to give special written charges asked by the defendant, the latter duly excepted.

This case was before this court on a former appeal, when a judgment rendered by the circuit court was reversed and the cause remanded, on a point not made by the present record.—*Donehoo v. Johnson*, 113 Ala. 126. On that appeal, however, the same contention was made as is now insisted upon, in respect to the existence of a latent ambiguity in the description of the land, authorizing the introduction of parol evidence to show the true description intended. We have carefully considered the testimony contained in the record on this appeal, and, while it may be fuller and more explicit than it was presented on the former appeal, its legal effect is the same. On the former appeal, we held that the facts shown by the testimony did not disclose a latent ambiguity "in any respect;" and of the correctness of that decision we have no doubt.

Between a latent ambiguity and a mistake or error in description, there is a manifest difference; the former may be explained and the description aided by parol evidence in a court of law; while the other requires the jurisdiction of a court of equity for its correction. In the case of a latent ambiguity in the description of land in a conveyance, the title is not thereby defeated but parol evidence may be introduced to show the identity of the subject-matter of the conveyance; in the case of an error or mistake in the conveyance, however, if such error or mistake is material to the description, no title passes, and the remedy of the purchaser is by bill in equity for a reformation of the instrument. The same principle which would allow the admission of parol evidence in this case, would allow the same character of evidence in aid of a conveyance, describing the land as the southwest quarter of a designated section, when the land intended to be conveyed was the southeast quarter of the section. There is, and can be no difference in principle.—*Guilmartin v. Wood*, 76 Ala. 204, is, on principle, directly in point. In that case, Mr. Justice CLOPTON, after laying down some of the principles controlling the construction of written instruments, and the admis-

[Donehoo v. Johnson.]

sibility of parol evidence in aid thereof, says : "In construing a deed, an ambiguity in the description of the premises conveyed may be explained by parol evidence ; and when the description is by metes and bounds, evidence of the situation and locality of the premises, and of their identity, according to the description in the conveyance, is admissible. But such evidence is not admissible to show a mistake in the description, or to alter or vary the boundary, or to substitute another and different boundary for the one expressed in the conveyance." In that case, the conveyance described the lot as on the *east* side of a street, whereas the lot intended to be conveyed was on the *west* side of the street ; and it was held that parol evidence was not admissible to show title in the lot intended to be conveyed ; and, in this connection, it was further said : "It may be conceded that this part of the description is a mistake of the draughtsman of the deed. If so, a court of law is without power to reform it ; and without having been reformed by a court having jurisdiction, it is inoperative to pass the legal title to land situate on the west side of the street. The deed having been offered as a muniment of title, the admission of evidence *aliunde* to show such a mistake, is to ascertain and declare what was *intended* to be written, and not the *meaning* of what is written, in the conveyance."—2 Am. & Eng. Encyc. Law (2d ed.) p. 304 ; 1 Jones on Law of Real Property in Conveyancing, §§ 335, 336.

If the description of the boundary line in question had terminated it generally at *a stake*, without more, parol evidence might have been admissible to show the location of this stake ; but the description goes further and locates this stake at the northwest corner of the quarter section, a point well defined and fixed by the government survey ; and it matters not, so far as the deed under which the defendant claims is concerned, whether or not in fact there ever was a stake at that point. It is clearly the effect of the description, that the line should run to a point at the northwest corner of the quarter section designated in the deed, and not to stop at the northeast corner thereof.

[Donehoo v. Johnson.]

On behalf of the defendant, the county surveyor was examined as a witness, who testified that, in December, 1895, he surveyed the lands described in the register's deed to the defendant, and made a map thereof, which map was produced and read in evidence, and is copied in the transcript. After describing the survey made by him, and stating the manner in which it was made, the witness testified, that the "deed did not include or describe the land sued for in this action." To this statement the defendant objected, on the ground that it was illegal, irrelevant, and called for a conclusion, and that the deed was the best evidence of the land it included. The deed itself was in evidence, and the witness was testifying in respect to the identification of the lands thereby conveyed. He had the deed before him and the map of the survey which he had made, both of which, when compared one with the other, showed that the land in controversy had not been conveyed. The effect of his testimony, under these circumstances, was that the *description* of the lands, as contained in the register's deed to the defendant, did not include the land involved in this suit. The testimony was clearly competent; and the court below committed no error in overruling the defendant's objection.

There is nothing in the argument for a reversal based upon the proposition that the plaintiff is estopped from claiming title to the land sued for. It is shown by the evidence that John Reid, several years before his death, executed a conveyance to his son-in-law, S. H. C. Johnson, the husband of the plaintiff, conveying lands by the same description as that employed in the register's deed to the defendant; and that after her husband's death, subsequently occurring, the plaintiff was appointed administratrix of his estate, and, as such administratrix, she went into the possession of the lands conveyed by the deed to her husband, and also the land sued for, as a part thereof, and continued in such possession until she resigned, as administratrix, and, afterwards, upon the appointment of the defendant as the administrator *de bonis non* of her deceased husband's estate, she delivered the possession of the lands to the defendant as her successor in the administration, as a part of the estate of her deceased husband. This conduct on her part did

not work an estoppel; and even if it did, it did not operate to divest her of the legal title vested in her by descent. Estoppels *in pais* can not defeat a recovery in ejectment founded upon legal title in the plaintiff. These propositions are too well settled to require discussion, or the citation of authority in support of them.

As heretofore stated, both parties claim under John Reid. The bill of exceptions expressly states: "The plaintiff claimed title to the land in controversy as the sole heir of John Reid, deceased, and the defendant claimed title under a purchase at the sale under a decree of the chancery court to satisfy a judgment against said John Reid, deceased, and defendant stated he would not set up any title anterior to the title of said John Reid, deceased." The deed by the register to the defendant was executed several years after the execution of the deed by Reid to Johnson; and Johnson was made a party defendant to the chancery suit, and, after his death, the suit was revived against his surviving wife, the plaintiff here, as his personal representative; and in that suit, the deed from Reid to Johnson was one of the conveyances attacked by the bill filed therein as fraudulent, and it was, by the decree rendered therein, in legal effect, vacated and set aside upon that ground. The evidence introduced on behalf of the defendant tended to show adverse possession in Johnson of the lands conveyed by Reid to him, and the land involved in this suit, as a part thereof, for the period of ten years prior to the bringing of this suit. This adverse possession was pleaded in defense of the suit. In no way is it shown by the evidence that the defendant connected himself with Johnson's title claimed to have been derived by him from Reid; on the contrary, as stated above, the deed conveying that title was, at the suit of a creditor of John Reid, held fraudulent and void, and was, for that reason, vacated and set aside, and the lands ordered to be sold, and were sold by the register, as the property of John Reid, and at the sale the defendant became the purchaser, and such purchase and the deed by the register thereunder, so far as shown by the record, constitute the only pretense of title ever asserted by the defendant. It is too clear for argument, under

this state of the proof, that the defendant claimed title under John Reid, the source from which the plaintiff also derived her title. Claiming title from the same source, it is the settled law of this State that he cannot set up an outstanding title in a third person to defeat a recovery by the plaintiff.—*Gantt v. Cowan*, 27 Ala. 582; *Pendley v. Madison*, 83 Ala. 484. Unless he acquired title from this source, he was a mere trespasser, and is for that reason deprived of such defense.—*Stephenson v. Reeves*, 92 Ala. 582; *Matkin v. Marx*, 96 Ala. 501. Again, whatever title he has, was derived under a decree of a court of competent jurisdiction, declaring the Johnson deed fraudulent, and vacating and setting it aside upon that ground. Clearly, he cannot be heard, in such case, to now defend under the Johnson deed, or upon adverse possession by Johnson, claiming under that deed.

There is no error in the record prejudicial to the appellant, and the judgment of the circuit court is affirmed.

The foregoing opinion was prepared by BRICKELL, C. J., and is adopted by the court.