ROBERT WELCH, Appellant, v. EMIL MISCHKE, Respondent.

Springfield Court of Appeals, April 3, 1911.

CONTRACTS: Novation: Consideration: Sufficiency of Evidence: Bills and Notes. In an action on a note which had been given for the purchese price of a stave saw and other machinery, the defendant claimed that under a contract which he had with plaintiff at the time the note was executed, defendant was to furnish a certain amount of staves, from the purchase price of which one dollar per thousand was to be deducted, and applied on the note; that subsequently a new agreement was made whereby, upon defendant furnishing a certain amount of staves and surrendering the machinery, the note was to be cancelled; that defendant had furnished the required number of staves and offered to return the machinery. The evidence is examined and held sufficient to show a consideration for the new contract and to justify a verdict for defendant on this affirmative defense.

2. ————: ————: ————. A valid contract made in substitution for one of prior date, annuls the obligation of the former, which in itself is a sufficient consideration to uphold the new contract.

3. ————: Construction: Construction by Parties. Where parties to a contract have given its terms a particular construction, such construction will generally be adopted by the court in giving effect to its provisions.

4. VERDICT: Inconsistent Finding. In an action on a note defendant answered, setting up that the note was to be cancelled when he had sawed a certain amount of staves, and that he had sawed the specified amount. He also counterclaimed for a balance due on account of the staves being in excess of the average width. The jury were instructed that defendant could not recover on the counterclaim, unless he had notified plaintiff within a reasonable time that the staves sawed exceeded the

average width and demanded pay for the difference. Other instructions covering plaintiff's claim and defendant's affirmative defense were given and the jury found against defendant on the counterclaim and against plaintiff on his action. From the verdict it appeared that the jury had counted the excess in the width of the staves under the agreement of the parties in estimating the total amount of staves sawed. *Held*, under the evidence and instructions, the verdict was not inconsistent.

Appeal from Crawford Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*R. P. Spencer* and *A. L. Reeves* for appellant.

(1) The antecedent existence of the indebtedness having been proved by the creditor, the burden of proving its discharge is upon the debtor or person alleging the discharge. Supply Co. v. Wolfe, 127 Mo. 616; Barrett v. Kern, 141 Mo. App. 43; Griffith v. Creighton, 61 Mo. App. 1; Diel v. Stegner, 56 Mo. App. 535; Carder v. Primm, 47 Mo. App. 301; Hutchinson v. Henry, 44 Mo. App. 263. (2) It is an elemental principle that neither the promise to do nor the actual doing of a thing which the promisee is already bound by law to do is a sufficient consideration to support a contract in his favor, and a subsequent agreement, not forming a part of the original contract, nor supported by any new consideration, is a mere nude pact, of no force or validity. Such is the situation here. 6 Am. and Eng. Ency. of Law, 750; Wendover v. Baker, 121 Mo. 273; McFarland v. Heim, 127 Mo. 327; Grath v. Tile Co., 121 Mo. App. 245. (3) The code requires that all material facts not in writing shall be pleaded and that the proof thereof shall correspond with the pleadings. "The converse of this proposition follows and obtains inevitably; that is, the material facts not in writing shall not be proved at the trial; the proof and allegation must correspond.", Mark v. Cooperage Co., 204 Mo. 261. (4)

When plaintiff specifically alleges in his petition a given state of facts as constitutive of his cause of action, he must recover on such facts, and no others.  Haynor v. Light Co., 124 Mo. App. 691.

*Harry Clymer* for respondent.

(1)  The court did not err in admitting testimony in support of the allegations contained in defendant's answer.  The parties had a right to make a new contract, and its substitution for the former contract is a sufficient consideration to support it.  Pottery Co. v. Flockemer, 131 Mo. App. 105; Scriba v. Neely, 130 Mo. App. 258; Press Brick Co. v. Barr, 76 Mo. App. 386; Lancaster v. Elliott, 55 Mo. App. 255    (2)  The evidence conclusively establishes the fact that both plaintiff and defendant acted on the modified contract, consequently this constituted an abandonment of the original contract, which of itself is a sufficient consideration to support the modified contract.  Connon-Weiner Co. v. Boswell, 117 Mo. App. 473.  (3)  In determining whether the case should go to the jury on the facts in evidence, every reasonable deduction to be drawn from the testimony tending to support the defense must be considered as true, and every reasonable inference to be drawn from the evidence must be in defendant's favor. Ladd v. Williams, 104 Mo. App. 390; McFern v. Gardner, 121 Mo. App. 5; Koerner v. Car Co., 209 Mo. 151. (4)  It then became a question of fact to be determined by the jury from the evidence, whether or not defendant had complied with the new contract, and the finding of the jury on that question, having received the approval of the trial court, is conclusive on appeal, unless there is an entire absence of evidence to support it.  O'Brien v. Boiler Works, 133 S. W. 347; Knapp v. Nanley, 132 S. W. 748; Dowling v. Wheeler, 117 Mo. App. 182.

NIXON, P. J.—This was a suit on a promissory note for the principal sum of $549.32, executed by defendant (Mischke) to plaintiff (Welch) for the purchase price of a stave saw and appurtenances, the plaintiff retaining a vendor's lien on said machinery in the language usually employed in the creation of such liens. Plaintiff prayed for judgment on the note in the sum of $724.40 (principal and interest), for the enforcement of the lien and for the sale of the property to satisfy said judgment and costs.

Defendant, for answer, admitted the execution of the note, but set up as an affirmative defense that according to the terms of a new contract between plaintiff and defendant, made after the execution of the note, defendant was relieved from the payment of the note by the manufacture and sale to plaintiff of 500,000 white oak staves, including those already made by defendant for plaintiff after the execution of the note but before the making of the second contract, and by the return of the machinery to the plaintiff. Defendant pleaded an offer to surrender the machinery, and a demand for the note, alleging his compliance with the terms of said second contract. Defendant also pleaded a counterclaim in the sum of $343 as a balance due him on account of staves sold plaintiff, alleging that he had sold plaintiff 514,500 staves and had been paid for but 490,000.

Plaintiff's reply was a general denial and a plea of lack of consideration to support the alleged second contract.

The lien feature was eliminated from the case and the cause was tried as a suit on a promissory note, with defendant urging his affirmative defense. The jury found for the defendant on the note and for plaintiff on the counterclaim. Plaintiff has appealed.

The evidence shows that on April 15, 1902, the defendant executed his promissory note for $549.32 as the purchase price of a stave saw and appurtenances, the

plaintiff retaining a vendor's lien on said machinery. Before the execution of this note, however, plaintiff wrote a letter to defendant stating that plaintiff would sell the machinery to defendant and that he (plaintiff) would "contract to take 500,000 No. 1 white oak staves, to be 13-16 of an inch thick when green so they will measure 3-4 of an inch when dry, 34 inches long, and to average 4 1-2 inches wide after all defects are measured out so they will run this width after being smooth jointed at the finishing plant, and pay you $12.50 per 1000 on cars at Sligo or any station near there on the Frisco line. If staves do not run this wide you are to put in enough extra to make it up; if they run wider we to allow for them. In other words, you are to furnish us 4500 inches of clear timber for every 1000 staves, no staves to be put in less than three inches wide. . . . Will agree to let you pay for machinery in staves, you leaving back $1 on every 1000 made, you to agree to make not less than 30,000 per month on an average after getting started. Will advance you on each month's cut $7 per 1000. . . . On each car loaded out will advance you $3 more per 1000, and balance as soon as car is unloaded and counted out." After plaintiff's signature, defendant wrote, "I accept the above proposition."

By letter of October 3, 1903, from plaintiff to defendant, it appears that plaintiff had allowed defendant $13 per 1000 instead of $12.50 for all staves shipped up to that time, and in this letter plaintiff agreed to increase it to $14 per 1000.

By letter dated September 12, 1904, from plaintiff to defendant, it appears that defendant had been to St. Louis to see plaintiff and that a new contract had there been made. The reference to such contract in this letter is as follows: "In regard to making staves, when you were here I told you if you would make 500,-000, I would deliver the note back to you and take the machinery off your hands, which I consider very fair

Welch v. Mischke.

and which I stand ready to do when you cut this many staves, and in case you quit cutting the staves, I shall expect you to pay the note with interest and keep the machinery. If you do this you are at liberty to cut staves for anyone you want to. It's up to you what is best to do."

Defendant testified: "Q. Mr. Mischke, when you were in St. Louis you say that you had an agreement with Mr. Welch that if you would make 500,000 staves the note would be surrendered to you. Now I will ask you if that agreement was to include the staves already made? A. That is what I understood."

By letter dated August 27, 1904, from plaintiff to defendant, the following appears: "When you were here in St. Louis I agreed to take the machinery back, provided you could cut 500,000 No. 1 staves, and since you were here you have made very little effort to get out the staves, and I will say to you that unless you cut the 500,000 staves, I shall expect you to pay for the machinery. If you do not cut staves faster, I shall have to send the notes over for collection. You say you are after 320 acres of timber, and if you get it it ought to make the 500,000 staves. In regard to sending you more money, I want to hear from you as to what you expect to do, and if you want to do the right thing, I will do everything that I agreed to, to help you out."

T. H. Wiseman for the plaintiff testified that he and plaintiff manufacture staves together and that it is his business to go around and look after the factories and inspect the stock. That he was present in St. Louis in 1904 when defendant was there to see plaintiff; that defendant "wanted to have his note returned—the note he had given for the machinery—and Mr. Welch told defendant he would not return it, but he said, 'If you will get me 500,000 No. 1, 34 inch staves, and deliver them to me on the yard at Dillard, I will pay you the price I am now paying you for them and surrender your note.' We were to take back the machinery."

Was there sufficient evidence of a consideration for the second contract—that is, the contract made while defendant was in St. Louis in 1904, referred to in the letter of September 12, 1904 to authorize the trial court to refuse plaintiff's peremptory instruction and submit the case to the jury? In plaintiff's letter to defendant, dated September 12, 1904, we find that plaintiff has agreed to surrender defendant's note—not on payment of the principal sum with interest, in a lump sum, or at the rate of $1 withheld on every 1000 staves furnished—but on condition that defendant furnish 500,000 staves; and that, under this agreement, when plaintiff surrendered the note, defendant should surrender the machinery. Here is a different situation. Defendant on his part agrees to get out the staves the same as before, but also to surrender the machinery. This was a loss. Defendant testified that he contracted these staves at $12.50 per 1,000 "and they were paying at that time $24 to $26." Defendant received $13 per 1000 for the first three carloads and $14 per 1000 for the remainder. Having to surrender the machinery after making 500,000 staves meant that he was paying ten to twelve dollars per thousand staves for the use of the machinery. Plaintiff on his part agreed to surrender the note, and take back the machinery, something he was not required to do under the first contract. It is obvious that the second contract was supported by a sufficient consideration. Indeed, the very substitution of the new contract for the old was a sufficient consideration. As said in Peters & Reed Pottery Co. v. Folckemer, 131 Mo. App. l. c. 106, 110 S. W. 598, "There is no doubt of the right of the parties to make a new agreement. The fact of its taking the place of the old, was a sufficient consideration." Again, in Scriba v. Neely, 130 Mo. App. l. c. 261, 109 S. W. 845: "In bilateral contracts the promise of each one of the parties is a sufficient consideration for the promise of another. . . . Consideration means not so much that one

party is profited as that the other abandons some legal right in the present, or limits his legal freedom of action in the future as an inducement for the act of promise for the first. It does not matter whether the party accepting the consideration has any actual benefit thereby or not—it is enough that he accepts it and that the party giving it does thereby undertake some burden or lose something which in contemplation of law may be of value." Further, "A valid contract made in substitution for one of a prior date, annuls the obligation of the former, and of itself furnishes a sufficient consideration for the release of the first agreement." [Sanders' Pressed Brick Co. v. Barr, 76 Mo. App. l. c. 386 and cases cited; Lancaster v. Elliot, 55 Mo. App. l. c. 255.] Moreover, where a modified contract is acted upon by the parties, the original contract is abandoned, which of itself will uphold the modification thereof, so far as consideration is concerned. [Cannon-Weiner Co. v. Boswell, 117 Mo. App. l. c. 476, 93 S. W. 355.]

Appellant contends that his peremptory instruction should have been given for the reason that the burden of proving the discharge of the indebtedness was upon the defendant—the party alleging the discharge—and that there was no evidence showing that defendant furnished 500,000 No. 1 staves according to his contract.

During the early part of the trial nisi counsel agreed "that defendant shipped to plaintiff 447,560 No. 1 staves and 86,070 No. 2 staves and the same were accepted by plaintiff; this agreement means the above number by count and not by measurement." Defendant testified that plaintiff while at defendants mill told defendant he would take two No. 2 staves for one No. 1. Taking defendant's view of the second contract—that the 500,000 staves meant 500,000 including those already shipped up to that time—and adding to 447,560, one-half of 86,070, we find only the equivalent of 490,-590 No. 1 staves. It will be remembered that in the first contract (of February 3, 1902) the agreement was that

defendant was to furnish plaintiff 4500 inches of clear timber for every 1000 staves; that is, the staves were to average 4 1-2 inches in width, no staves to be less than three inches wide. Defendant testified that in 1902 and 1903 "and several times" plaintiff measured staves at defendant's mill; that plaintiff would measure a large number and then figure the average width; that he told defendant at those times that "900 staves would scale out a thousand," meaning that the average width of the staves was ten per cent more than 4 1-2 inches; that he agreed to plaintiff's average and thought it was fair; that he never received any money from plaintiff for this excess or any statement of the amount due him for excess and that he never sent plaintiff a statement for the same or kept any book account of the same; that he spoke to plaintiff about it several times, asking him to settle, but that plaintiff always said he would fix that up later and always put it off; that "he promised he would settle up after a while, after we got done, you know, then he would settle up and pay me." "Mr. Welch always put it off, and that was the understanding, he was to pay me later on, when we got done." And defendant stated that he figured ten per cent as the excess according to what he and plaintiff had agreed on, and that he always expected to receive pay for this excess.

We think there was enough evidence on this issue to authorize the submission of the case to the jury. The case was submitted—as to this issue—on instructions substantially as follows: For the plaintiff the jury was told that if defendant delivered staves to plaintiff during the years 1902, 1903, 1904, 1905, 1906 and 1907, and plaintiff accepted them and paid defendant the contract price, and according to defendant's own count, then it was the duty of the defendant, if he desired to make a claim against the plaintiff on account of the staves running wider than the average width (4 1-2 inches) provided in the contract, to notify plaintiff within a rea-

sonable time after the delivery of the staves that the
staves so delivered ran wider than the width called for
in the contract and to demand payment for such excess
within a reasonable time, and in the absence of such no-
tice and demand the jury should find for the plaintiff on
defendant's counterclaim.    The court of its own motion
gave this instruction: "If you find from the evidence
that the staves furnished by Mischke to plaintiff did not
average more than 4 1-2 inches in width, then you will
find for the plaintiff on defendant's counterclaim."
For the defendant the jury was told that if they found
that under the second agreement defendant did make
and deliver to plaintiff 500,000 No. 1 staves of the aver-
age width of 4 1-2 inches, they would find for the defend-
ant as to the surrender of the note.    The following ver-
dicts were returned:

"We, the jury, find the issues on the counterclaim
for the plaintiff, that he does not owe the defendant any-
thing on account of the staves averaging over 4 1-2
inches."

"We, the jury, find the issues for the defendant on
the note that plaintiff agreed to take the machinery in
payment of same if defendant delivered to him 500,000
staves under the contract and that defendant complied
with said contract and that the note is satisfied there-
by."

Appellant contends that these two verdicts are in-
consistent one with the other.    The trouble with appel-
lant's contention is that it stands upon the untrue
hypothesis that the instructions given concerning the
recovery of the excess as set up in the counterclaim
should apply generally to all the issues and limit the
jury so that they could not add whatever excess they
found there was on the 490,590 staves actually furn-
ished in order to make out the 500,000 staves, the num-
ber defendant agreed to furnish before his note would
be surrendered.    These instructions referred only to the

counterclaim and this is made clear in the instructions themselves. The instruction given by the court of its own motion simply told the jury that if the staves did not average more than 4 1-2 inches in width they should find for the plaintiff on defendant's counterclaim. Of course this was correct. The plaintiff's instruction goes entirely on the question of whether notice and demand were seasonably given and made, and not on the general question as to whether excess should be allowed in any event. Indeed, it assumes as its basis that excess was allowable and then requires a finding that reasonable notice was given and demand made before a recovery could be had therefor. The result was that the jury found for the plaintiff on defendant's counterclaim, and then, finding that defendant had furnished only the equivalent of 490,590 No. 1 staves, according to count, looked to the evidence which tended to show that the staves would scale 1000 for every 900 and that the average width was over 4 1-2 inches, and, to the original contract, which clearly defined the intention of the parties to be that defendant was to furnish 4500 inches of clear timber for every 1000 staves with the express provision that if they run wider plaintiff was to allow for the excess, and the jury, no doubt, took this provision as evidence of the intention of the parties. They found enough, according to measurement, to make up the necessary 500,000 No. 1 staves. Having done so, the verdict was found for the defendant on the note, and rightly so. The fact that the two verdicts may have been inconsistent as claimed by appellant is not necessarily conclusive that error was committed against the appellant. There was evidence tending to show that defendant was entitled to the excess claimed in his counterclaim and any error the jury may have committed in that behalf is not for our consideration as the defendant took no appeal. Moreoever, it is not sufficient for the appellant to show that the findings of the jury are incon-

sistent, but he must go farther and show that material error was thereby committed.

Appellant complains of the action of the trial court in admitting the evidence as to the terms of the agreement between plaintiff and defendant to the effect that two No. 2 staves would be taken as one No. 1 and paid for accordingly. This objection is based on the ground that there is nothing in the pleadings to support it. It is alleged in the pleadings that defendant agreed to and did furnish a certain number of staves under and by virtue of their contract, and that contract, as modified and acted upon by both parties, was that two No. 2 staves would be accepted in place of one No. 1 and the evidence tended to show that they were so paid for. The jury has found that this was the contract. The meaning of this language is to be interpreted by the understanding of the parties as shown by their actions and dealings. Where parties to a contract have given its terms a particular construction, such construction will generally be adopted by the court in giving effect to its provisions. [9 Cyc. 588; The St. Joseph Union Depot Co. v. Railway, 131 Mo. 291, 31 S. W. 908; Meyer v. Christopher, 176 Mo. 580, 75 S. W. 750.] We therefore find that no error was committed in the admission of this evidence.

A thorough examination of this record convinces us that the result reached by the jury was entirely fair and just to both parties, that the judgment was for the right party, and should be affirmed. It is accordingly so ordered. All concur.