Russell **HARDIN** and Mary Louise Hardin, Plaintiffs-Appellants,

v.

James H. **RAY** and Violet Ray, Defendants-Respondents.

No. 8512.

Springfield Court of Appeals.

Missouri.

June 16, 1966.

Powell, Jones & Ringer, Dexter, for plaintiffs-appellants.

Briney, Welborn & Spain, Bloomfield, for defendants-respondents.

STONE, Presiding Judge. ·

This action was instituted by plaintiffs Russell Hardin and Mary Louise Hardin, husband and wife, against defendants James H. Ray and Violet Ray, husband and wife, to recover $6,570 allegedly overpaid for approximately 1155 acres of land in Stoddard County, Missouri, purchased by plaintiffs from defendants under a written "Real Estate Contract" dated and executed on December 19, 1963 (hereinafter referred to as the contract). In their answer, defendants asserted that the contract did not set out "the actual agreement" of the parties; and by their "crossbill," more properly designated a counterclaim [V.A.M.R. Rule 55.01], defendants sought reformation of the contract. Upon trial by the court, judgment was entered (a) "that plaintiffs take nothing on their [first amended] petition," (b) "that defendants take nothing on their crossbill herein, reformation of the contract being hereby denied," and (c) that one-half of the costs be taxed against plaintiffs and one-half against defendants. After an unsuccessful "Motion for Judgment and in the Alternative for a New Trial," plaintiffs appeal. Defendants filed no after-trial motion and do not appeal.

The contract, prepared by an attorney and executed in his office, was dictated by him in the presence of plaintiffs, defendants and one Reginald Merrick, the real estate agent representing defendants-sellers; and, after transcription by his secretary, the attorney read the contract aloud in the presence of the same group, with a copy of the contract then in the hands of one of the plaintiffs and another copy then in the hands of defendant husband. No objection being voiced and no change being suggested, the parties thereupon executed the contract. That portion of the contract material to the controversy before us provided for sale of the land "for the price and sum of *Three Hundred Thousand and No/100* DOLLARS, to be paid by the buyer as follows: *$30,000.00* at the time of the execution and delivery of this agreement, the receipt of which is hereby acknowledged by the seller and which is deposited with [*the attorney*], as earnest money and as part of the purchase price and the balance thereof is to be paid in the following manner, to-wit: *Buyers assume and agree to pay a promissory note secured by a first Deed of Trust on the premises to.Northwestern Mutual Life Ins. Co. on which there is a present balance due in the sum of $150,000.00. Sellers agree to make the annual principal payment to said company in the sum of $12,570.00 on Jan. 1, 1964. The balance of the purchase price in the sum of $132,570.00 shall be paid by the execution and delivery by Buyers to Sellers of a promissory note secured by a second Deed of Trust on the premises . . . .*" The italicized portions of the above quotation were typewritten in blanks provided on the face of a single-page printed form. Printed "General Closing Conditions and Sales Practises" and "Special Agreements" on the reverse side of the form were made a part of the contract by reference.

Upon consideration of the quoted provisions, it becomes plain that the contract provided for a purchase price of $300,000 to be paid by plaintiffs-buyers in this manner: (a) By payment of $30,000 in cash on December 19, 1963, the date of execution and delivery of the contract; (b) by plaintiffs' assumption of and agreement to pay an indebtedness of $137,430 to Northwestern Mutual Life Insurance Company evidenced by a note secured by first deed of trust on the land (the contract reciting that there was then "*a present balance due in the sum of $150,000.00*" which was to be reduced to $137,430 by defendants-sellers making "*the annual principal payment to said company in the sum of $12,570.00 on Jan. 1, 1964*"); and (c) by plaintiffs' execution and delivery to defendants of a note for $132,570 to be secured by a second deed of trust on the land. (Except as is otherwise specifically noted, all emphasis herein is ours.) Plaintiffs made the cash payment of $30,000 and executed and delivered their note for $132,570 secured by second deed of trust

on the land. This litigation has arisen because the payment of $12,570 made by defendants-sellers on the Northwestern Mutual loan on January 1, 1964, was *not a principal payment of $12,570* but consisted of *an interest payment of $6,570 and a principal payment of only $6,000,* which left plaintiffs with an indebtedness of $144,000 rather than $137,430 secured by first deed of trust on the land and thereby raised the total consideration paid for the land in a corresponding amount (i. e., by $6,570, the interest payment) from $300,000 to $306,570.

Plaintiffs' theory of the case is that the contract was complete, unambiguous and valid and that defendants breached it in that they reduced the principal sum of the Northwestern Mutual loan by only $6,000 instead of $12,570 and thereby increased the total consideration paid by plaintiffs from $300,000 to $306,570. Their note for $132,-570 secured by second deed of trust on the land having been sold to an innocent purchaser prior to institution of this action, plaintiffs sued defendants for recovery of the alleged $6,570 overpayment.

 Plaintiffs' action is grounded on the so-called parol evidence rule, by the application of which our courts uniformly have held that, in the absence of fraud, duress, mistake or mental incapacity, an integrated unambiguous written contract may not be varied, altered or contradicted by parol or extrinsic evidence,[1] and all prior or contemporaneous agreements are conclusively presumed to have been merged into the written contract,[2] which "itself becomes and is the single and final memorial of the understanding and intention of the parties." Commerce Trust Co. v. Watts, 360 Mo. 971, 977–978, 231 S.W.2d 817, 820; Connor v. Temm, Mo.App., 270 S.W.2d 541, 545. The parol evidence rule, "founded upon the experience of mankind in dealing with the 'slippery memory' of men" [Jackson v. Chicago, St. P. & K.C. R. Co., 54 Mo.App. 636, 644; Stringer v. Geiser Mfg. Co., 177 Mo.App. 234, 242, 162 S.W. 645, 648—see Tracy v. Union Iron-Works Co., 104 Mo. 193, 198–199, 16 S.W. 203, 204], is not merely a rule of evidence but is one of positive substantive law predicated upon the substantive rights of the parties;[3] and, where the rule is applicable, parol evidence should be ignored, even though received without objection. Commerce Trust Co., supra, 360 Mo. at 977, 231 S.W.2d at 820(7); Connor, supra, 270 S.W.2d at 546(3).

Defendants have not, at any stage of the litigation, suggested any *fraud, duress or mental incapacity;* but, in the trial court, they did both plead and rely upon alleged *mistake.* In their answer, they denied that the contract set out "the actual agreement" of the parties and asserted that "the true agreement" was as stated in defendants' "crossbill" or counterclaim.

Turning to that pleading, we find that defendants there alleged that, "prior to the

1. Commerce Trust Co. v. Watts, 360 Mo. 971, 977, 231 S.W.2d 817, 820(6); Frimel v. Blake, Mo.App., 360 S.W.2d 258, 261(2); Davison v. Rodes, Mo.App., 299 S.W.2d 591, 593(2); Connor v. Temm, Mo.App., 270 S.W.2d 541, 545; 32A C.J.S. Evidence § 851, p. 211; 2 Jones on Evidence (5th Ed.), § 466, l.c. 884–885.

2. J. B. Colt Co. v. Gregor, 328 Mo. 1216, 1225, 44 S.W.2d 2, 6(3); Grapette Company v. Grapette Bottling Co., Mo.App., 286 S.W.2d 34, 39(10); Kalberg v. Gilpin Co., Mo.App., 279 S.W.2d 177, 181 (3); Edwards v. Sittner, Mo.App., 213 S.W.2d 652, 656(7); Sol Abrahams & Son Const. Co. v. Osterholm, Mo.App.,

136 S.W.2d 86, 92(2, 3); Meyer v. Weber, 233 Mo.App. 832, 837, 109 S.W.2d 702, 705(2); Duncan v. Spencer, Mo. App., 211 S.W. 698(2); General Acc. Fire & Life Ins. Co. v. Owen Bldg. Co., 195 Mo.App. 371, 373, 192 S.W. 145, 146(1); 2 Jones on Evidence (5th Ed.), § 466, l.c. 887.

3. Warinner v. Nugent, 362 Mo. 233, 238, 240 S.W.2d 941, 944(1), 26 A.L.R.2d 278; Commerce Trust Co., supra note 1, 360 Mo. at 977, 231 S.W.2d at 820(7); Dutcher v. Harker, Mo.App., 377 S.W.2d 140, 143(1); 20 Am.Jur., Evidence, § 1100, p. 963; 32A C.J.S. Evidence § 851, p. 211.

said 19th day of December, 1963 [the date of the written contract], the parties agreed among themselves that defendants would sell said farm to plaintiffs on the following terms," to wit, (a) that plaintiffs would pay $30,000 in cash to defendants, (b) that plaintiffs would "assume the balance due by plaintiffs (sic) to Northwestern Mutual . . . secured by a deed of trust" on the land, (c) that defendants would pay "the principal and interest due on said Northwestern Mutual . . . indebtedness on January 1, 1964, but plaintiffs agreed to include said principal and interest payment in plaintiffs' note to defendants, secured by a second deed of trust on said lands," and (d) that plaintiffs would execute and deliver to defendants their promissory note in the principal sum of $132,570, secured by second deed of trust on the land. Defendants then averred that the parties "did thereafter, on December 19, 1963, enter into a written contract which . . . the parties intended to incorporate" the alleged prior oral agreement, but that "on account of an error on the part of the scrivener . . . said written contract did incorrectly state the true and actual agreement" in that (a) it "incorrectly stated the consideration for said sale was $300,000 whereas in truth and in fact, the parties agreed that the total amount of the consideration was $306,570," and (b) it "incorrectly states" that " 'Sellers agree to make the annual principal payment to said company in the sum of $12,570.00 on January 1, 1964,' whereas in truth and in fact sellers (defendants) agreed to pay the annual principal and interest payment . . . of $12,570, consisting of principal payment of $6,000 and interest payment . . . of $6,570." Finally, defendants stated that the "contract was incorrectly written by the mistake of the scrivener who drew the same, and that it did not express the mutual intent of the parties, but was executed and delivered by the parties under a mutual mistake of the facts as to the matter aforesaid . . " The prayer of the "crossbill" or counterclaim was for a decree "reforming said contract so as to truly contain and set forth

the actual agreement between the parties as herein alleged."

When, early in the trial, plaintiffs' counsel objected to parol evidence concerning discussions and negotiations between the parties prior to execution of the written contract, which tended to impeach or contradict that contract, the response of defendants' counsel was that "we have a count in here to reform the contract"; and, in ruling the objection, the trial court said that "I think in the first place the contract is ambiguous or we wouldn't have this lawsuit, and there is a count to reform the contract, so the objection is overruled."

At the conclusion of the trial, the court found and declared, inter alia, that the contract "is ambiguous on its face" and "also ambiguous when considered in connection with the facts," but that "there was no mutual mistake on the part of plaintiffs and defendants, and no misrepresentation by defendants and mistake on the part of plaintiffs, in the preparation and execution of the contract" and that "the evidence is insufficient to show any error on the part of the scrivener which would justify reformation of the contract." However, on the parol evidence (most of it disputed) concerning discussions and negotiations prior to execution of the written contract, the trial court also found that "plaintiffs offered to pay a total consideration of $300,000 . . . and defendants refused to sell for that price"; that "defendants offered to sell . . . for a total consideration of $306,570 (although this figure was not specifically mentioned in the conversations leading up to the preparation of the contract) and said sum was made up of . . . cash $30,000, Northwestern [Mutual] indebtedness $144,000, note and second d/t $132,570"; and that "plaintiffs, by their admitted actions, accepted said offer . . . ." As stated at the outset of this opinion, the decree was "that plaintiffs take nothing on their [first amended] petition" and "that defendants take nothing on their crossbill

herein, reformation of the contract being hereby denied."

Since defendants have not appealed, the findings of no mistake stand unassailed and could not be attacked here by defendants,[4] and the unappealed judgment against defendants on their "cross-bill" or counterclaim must be recognized as an adjudication, adverse to them, of the issues raised by that counterclaim,[5] including the issues (1) as to whether or not the "written contract did incorrectly state the true and actual agreement" of the parties and (2) as to whether or not the "contract was incorrectly written by the mistake of the scrivener . . . and . . . did not express the mutual intent of the parties, but was executed and delivered by the parties under a mutual mistake of the facts . . . ." Hence, the reception of parol evidence to vary, alter or contradict the written contract under consideration cannot be justified on the ground of *mistake*. And indeed defendants do not undertake so to do, but rather seek to support the judgment for them on plaintiffs' first amended petition on the theory that "there is a *latent ambiguity* in the language of the contract and the court must turn to extrinsic evidence to ascertain the true intention of the parties." It may be noted here that, although the trial court also found and declared that the contract "is ambiguous on its face" and thus *patently* ambiguous, defendants' counsel frankly concede on this appeal that "there is no ambiguity on the face of the contract."

However, they earnestly insist that the contract was *latently* ambiguous because, as was shown by extrinsic evidence, the payment *required* on the Northwestern Mutual loan on January 1, 1964, was *not a principal payment of $12,570* but consisted of an interest payment of $6,570 and a principal payment of only $6,000. Hence (so counsel argue) "the contract refers to a situation that does not, in fact, exist." But the particular contractual language under consideration (i. e., "Sellers agree to make the annual principal payment to said company in the sum of $12,570.00 on Jan. 1, 1964") does not specifically state or necessarily imply that the note evidencing defendants' indebtedness to Northwestern Mutual *required* payment of $12,570 upon the principal; and there has been no suggestion that such payment of $12,570 upon the principal would not have been *permissible* and *permitted*.

Lord Bacon described "ambiguitas latens" or "latent ambiguity" as being "that which seemeth certain and without ambiguity for anything that appeareth upon the deed or instrument, but there is some collateral matter out of the deed that breedeth the ambiguity." 2 Jones on Evidence (5th Ed.), § 488, p. 940. He also termed it as "equivocation" and, with the exception of a single application (not here material), "the two were to him synonymous." 9 Wigmore on Evidence (3rd Ed.), § 2472, 1. c. 239. And, under the heading of "Exception for Equivocation, or Latent Ambiguity," Dean Wigmore similarly treats of this subject, stating that "declarations of intention, though ordinarily excluded from consideration, are receivable to assist in *interpreting on equivocation*—that is, a term which, *upon application to external objects,* is found to fit *two or more of them equally.*" (Emphasis not ours) Id., § 2472, p. 233. In Hardy

4. Smith v. Holdoway Const. Co., 344 Mo. 862, 878, 129 S.W.2d 894, 903(19); Staub v. Phillips, 307 Mo. 576, 593, 271 S.W. 365, 369(5); James v. Groff, 157 Mo. 402, 423, 57 S.W. 1081, 1087(6); Davis v. Broughton, Mo.App., 369 S.W. 2d 857, 858–859; Wilson v. Motors Ins. Corp., Mo.App., 349 S.W.2d 250, 251.

5. Weber Implement Co. v. Acme Harvesting Mach. Co., 268 Mo. 363, 369, 187 S.W. 874, 875(2); Reece v. Van Gilder, Mo., 272 S.W.2d 177, 179(1); Lewis v. Lewis, 354 Mo. 415, 421, 189 S.W.2d 557, 559(1); Moore v. Hoffman, 327 Mo. 852, 867, 39 S.W.2d 339, 344–345(18), 75 A.L.R. 135. See King v. King, Mo. App., 382 S.W.2d 819, 820(1); Bybee v. Dixon, Mo.App., 380 S.W.2d 539, 540(1); Welch v. Mischke, 154 Mo.App. 728, 136 S.W. 36, 40(6).

v. Matthews, 38 Mo. 121, 124, our Supreme Court said that " '[a] latent ambiguity is where you show that words apply equally to two different things or subject matters, and then evidence is admissible to show which of them was the thing or subject matter intended.' " And, in County of Johnson v. Wood, 84 Mo. 489, 515, quoted with approval in Wolf v. Miravalle, Mo., 372 S.W.2d 28, 32, it was stated that "[a] latent ambiguity in respect to the property to be affected occurs in a dispositive writing when the language employed in the whole instrument does not serve to identify the thing to be transferred, but extrinsic evidence discloses the existence of two or more objects to which the whole description contained in the writing is *equally* applicable." (Emphasis not ours) See Meinhardt v. White, 341 Mo. 446, 107 S.W.2d 1061. Thus it is undoubtedly true that "[t]he most common form of latent ambiguity arises where an instrument contains a reference to a particular person or thing, and is thus apparently clear, but it is shown by extrinsic evidence that there are two or more persons or things to whom or to which the description might properly apply." 32A C.J.S. Evidence § 961b(3), p. 430.

We are cognizant that the latent ambiguity exception to the parol evidence rule may become applicable in other situations, as in Kast v. Kast, 361 Mo. 623, 235 S.W.2d 375, and in Prestigiacamo v. American Equitable Assur. Co. of New York, 240 Mo.App. 839, 221 S.W.2d 217, upon which instant defendants primarily rely. In Kast, supra, a property settlement agreement executed in November 1942, obligated defendant husband to transfer to plaintiff wife "75 shares of stock of Sears Roebuck & Company, if and when said stock is received by defendant from the Profit Sharing Fund of said Sears Roebuck & Company" [361 Mo. at 626, 235 S.W.2d at 376]; but, before the husband received such stock in January 1949, it had been split by issuing four new shares for one old share. By reason of this *subsequent change*

*in the subject matter of the contract,* the latent ambiguity exception was held to be applicable to permit determination of the intention of the parties, the court observing that the husband's contrary contention "overlooks the fact that 'shares of stock' or 'seventy-five shares of stock' may not always be and remain the same thing or have the same meaning at different times." 361 Mo. at 628, 235 S.W.2d at 377. In Prestigiacamo, supra, a fire policy described the insured property as two buildings situate at adjoining street addresses, whereas in fact there was a single integral structure, to different portions of which the adjoining street addresses were assigned. Under the latent ambiguity exception, extrinsic evidence was received to determine whether the parties had intended the structure to be insured as one or two buildings.

But instant defendants have not cited, and we have not found, a reported case in which the latent ambiguity exception has been held applicable in a situation comparable or analogous to that before us. The contract under consideration plainly and unmistakably committed the parties to a purchase price of $300,000 and then proceeded to spell out the manner in which that consideration was to be payable and paid. The clear complaint in defendants' pleadings and the indubitable thrust of their evidence were *not* that the contract was *latently ambiguous* in spelling out the manner in which the stipulated consideration of $300,000 was to be paid, but rather was (as we have heretofore pointed out in detail) that the true consideration was $306,-570 and that the "contract was incorrectly written by the mistake of the scrivener . . . and . . . did not express the mutual intent of the parties, but was executed and delivered . . . under a mutual mistake of the facts . . . ." In short, defendants boldly charged and relied upon alleged *mistake* in the trial court, whereas on appeal they depend upon *latent ambiguity*. There is a manifest difference between the two. Gallizzi v. Scavo, 406

Pa. 629, 179 A.2d 638, 642(3); Donehoo v. Johnson, 120 Ala. 438, 24 So. 888, 890.

■ If the language of the instrument is plain, explicit and certain, as it is here, but it is erroneous or wrong, as defendants have contended throughout the litigation, the latent ambiguity exception is not applicable and the remedy for the error, if the instrument thereby fails to express the intention of the parties, is by reformation to correct the mistake.[6] From all of the foregoing, we are of the opinion that there was no latent ambiguity, within the contemplation and purview of that exception, in the contract under consideration.

■ However, we need not and do not rest our determination of this appeal upon that conclusion alone. Even under the latent ambiguity exception, parol or extrinsic evidence is admissible only to explain an ambiguity, not to change or contradict the language of the written instrument.[7] By parol and extrinsic evidence concerning discussions and negotiations between the parties prior to execution of the written contract, instant defendants obviously sought and undeniably purposed to show that "the true agreement" was that the purchase price of the land was $306,570, not $300,000 as stipulated and provided in the contract. And, in an attempt to escape from the force and effect of the stated principle that, *even if* there had been latent ambiguity in the contract, parol or extrinsic evidence would have been admissible only to have explained such ambiguity and not to have changed or contradicted the contract, defendants' counsel make the sweeping statement under their "Points and Authorities" that "parol evidence is always admissible to explain or contradict the language of a contract in reciting the consideration for the instrument."

■ However, the governing principle, as recognized and applied in innumerable cases,[8] is that, where the statement as to consideration fairly may be regarded as a mere recital of fact or acknowledgment of payment, it may be explained or contradicted, but that, where such statement is more than one of mere recital or acknowledgment and is essentially of a contractual or executory nature, it can no more be changed or contradicted by parol or extrinsic evidence than any other part of the written instrument. The holdings in the two early cases cited by instant defendants under this point [Tracy v. Union Iron-Works Co., 104 Mo. 193, 16 S.W. 203; Aull Savings Bank v. Aull, 80 Mo. 199] were not inconsistent with the above-stated principle. Certainly the contract under consideration shows on its face, beyond possibility of cavil, that the primary stipulation committing the parties to a pur-

6. Walters v. Tucker, Mo., 281 S.W.2d 843, 847(4); Bloker v. Foley, Mo., 193 S.W. 561(2); Jennings v. Brizeadine, 44 Mo. 332, 334–335; Gallizzi v. Scavo, 406 Pa. 629, 179 A.2d 638, 642(2); Donehoo v. Johnson, 120 Ala. 438, 24 So. 888, 890. See National Cylinder Gas Co. v. G. H. Packwood Mfg. Co., Mo.App., 208 S.W. 2d 825, 827(2, 3); Texas Osage Cooperative Royalty Pool, Inc. v. Colwell, Tex. Civ.App., 205 S.W.2d 93, 95(3).

7. Walters, supra note 6, 281 S.W.2d at 847(2); Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004, 1005–1006(3, 4); 2 Jones on Evidence (5th Ed.), § 488, l.c. 942; 32A C.J.S. Evidence § 961b(2), pp. 429–430; 20 Am.Jur., Evidence, § 1157, p. 1010.

8. Kalberg v. Gilpin Co., supra note 2, 279 S.W.2d at 181; Meyer, supra note 2, 233 Mo.App. at 837–839, 109 S.W.2d at 705–706; Bert v. Rhodes, Mo.App., 258 S.W. 40, 43(7); Duncan v. Spencer, Mo. App., 211 S.W. 698, 699(3); General Accident Fire & Life Ins. Co. v. Owen Bldg. Co., supra note 2, 195 Mo.App. at 374, 192 S.W. at 147(3); Stringer v. Geiser Mfg. Co., 177 Mo.App. 234, 242–243, 162 S.W. 645, 647–648(4); Pile v. Bright, 156 Mo.App. 301, 308, 137 S.W. 1017, 1018(3), 1019(4); 32A C.J.S. Evidence § 958, pp. 371–372; Id., § 952, l.c. 363. See State ex rel. and to Use of Alport v. Boyle-Pryor Const. Co., 352 Mo. 1061, 1068–1069, 180 S.W.2d 727, 730 (3); Burk v. Walton, 337 Mo. 781, 789–790, 86 S.W.2d 92, 96(6).

chase price of $300,000 and the subsequent statements concerning the manner of payment were contractual and executory in nature and were of the very essence of the written agreement.

 With fraud, duress and mental incapacity never having been in the case, with the trial court's findings of no mistake standing unassailed and that issue adjudicated adversely to unappealing defendants, and with defendants' appellate contention of latent ambiguity rejected, the written contract must stand unchanged and uncontradicted by parol or extrinsic evidence. Therefore, we eschew the irrelevant and unrewarding task of reviewing and recording such evidence here and of commenting upon the many conflicting inferences which might be drawn therefrom. On the record which we take as it comes to us [Bennett v. Wood, Mo., 239 S.W.2d 325, 327(2); Schreck v. Parker, Mo.App., 388 S.W.2d 538, 544(12)], it is undisputed that, on January 1, 1964, defendants reduced the principal sum of the Northwestern Mutual loan by only $6,000 instead of $12,570, and that thereby the total consideration paid by plaintiffs under the contract was raised from $300,000 to $306,570. We are charged with the duty of making final disposition of a case on appeal unless the ends of justice otherwise require. V.A.M.R. Rule 83.13 (c); V.A.M.S. § 512.160(3); State ex rel. George v. Mitchell, Mo.App., 230 S.W.2d 116, 120(5); Axsom v. Thompson, 239 Mo.App. 732, 739, 197 S.W.2d 326, 331 (8–10). The only defenses interposed to plaintiffs' recovery having been determined adversely to defendants, no good reason appears or is suggested why the parties should be subjected to the further expense and delay incident to another trial.

Accordingly, the judgment of the circuit court for defendants on plaintiffs' first amended petition is set aside and the cause is remanded to that court with directions to enter a judgment on plaintiffs'

first amended petition finding the issues in favor of plaintiffs and against defendants and assessing plaintiffs' damages in the sum of $6,570.

HOGAN, J., concurs.