MISSISSIPPI VALLEY TRUST COMPANY v. SIDNEY S. SMITH and OTTO A. HAMPE, Administrator of Estate of CAROLINE B. FRANK, Interpleaders; OTTO A. HAMPE, Appellant.—9 S. W. (2d) 58.

Division One, July 30, 1928.

*Foristel, Mudd, Blair & Habenicht, August M. Brinkman, Glen Mohler* and *Harry S. Rooks* for appellant.

*S. Mayner Wallace* for respondent Smith.

SEDDON, C.—Plaintiff, a domestic and incorporated trust company, engaged in the banking and trust business in the city of St. Louis, on October 10, 1924, commenced this action in the circuit court of said city by filing therein a petition praying that summons be issued to defendants, Sidney S. Smith and Otto A. Hampe, administrator of the estate of Caroline B. L. Frank, deceased, under appointment of the probate court of said city, requiring said defendants to interplead therein for the purpose of establishing and determining which of said two defendants is the lawful owner of, and legally entitled to, a fund of $17,550.32, held on deposit in the savings department of plaintiff Trust Company, and afterwards deposited by plaintiff in the registry of said circuit court, subject to the order and judgment of said court. The substantive allegations of plaintiff's petition are as follows:

"That on and prior to the 26th day of August, 1924, there was on deposit in the savings department of the plaintiff, at its banking house in the city of St. Louis, the sum of seventeen thousand, five hundred, fifty dollars and thirty-two cents ($17,550.32), standing in the name of 'S. S. Smith and/or Mrs. Caroline B. L. Frank, either or survivor to draw;' that said S. S. Smith is the defendant Sidney S. Smith herein; that under and by virtue of the terms of said deposit it was expressly understood and agreed between said depositors and plaintiff that no part of said deposit should be paid except upon production to the plaintiff of the pass book issued to the depositors by the plaintiff evidencing such deposit, and that upon the final closing of said account and payment of said deposit said pass book should first be delivered and surrendered to the plaintiff for cancellation, in accordance with the laws of the State of Missouri.

"That on or about said 26th day of August, 1924, the said Mrs. Caroline B. L. Frank departed this life at the city of St. Louis, Missouri, intestate, as this plaintiff is informed and believes, and that thereafter, on or about the 27th day of August, 1924, the defendant Otto A. Hampe, as the duly elected, qualified and acting Public Administrator of the City of St. Louis, Missouri, did, pursuant to the statutes of the State of Missouri, open administration upon the estate of said decedent in the probate court of said city, and did duly qualify as such administrator of said estate in said court, and is and was at all times hereinafter mentioned acting as administrator in charge of said estate.

"That at the time of the death of said Mrs. Caroline B. L. Frank she was in possession of the aforesaid pass book, and that at all times since her death the defendant Otto A. Hampe, as such administrator, in charge of her estate, has been and is now in possession of said pass book.

"That subsequent to the death of said Mrs. Caroline B. L. Frank, said Sidney S. Smith, without the production of said pass book, or tender thereof, or accounting therefor, has called upon this plaintiff to pay to him the aforesaid balance of said deposit, but that prior to such demand said Public Administrator, Otto A. Hampe, so in charge of the estate of said deceased, delivered to the plaintiff notice in writing, on behalf of the estate of said decedent, not to pay such deposit, or any part thereof, to said defendant Sidney S. Smith, and thereby claimed the whole of said deposit as the property of the estate of said decedent, and demanded payment thereof to him as such Public Administrator in charge of said estate.

"That by reason of the premises, and of the said demands of the defendants upon this plaintiff for the payment of said balance, this plaintiff is threatened with litigation, in that each of said de-

fendants claiming said fund will bring legal proceedings against this plaintiff for the recovery of said fund, and that this plaintiff will be subjected to expense in the defense of such suits, and that this plaintiff is neither able to nor authorized to determine the title or ownership of said deposit or any part thereof."

Defendant, Sidney S. Smith, filed the following interplea:

"Comes now the defendant Sidney S. Smith, by attorney, and for his interplea herein states that, in the year 1912, he (under the initials and name of 'S. S. Smith') and one Caroline B. L. Frank (who died on August 26, 1924) made and opened a joint savings account of deposit, in and with the plaintiff, Mississippi Valley Trust Company, payable to either or to the survivor of them; that the moneys in said account, on said August 26, 1924, amounted to the sum of seventeen thousand, five hundred fifty dollars and thirty-two cents ($17,550.32) and that same represent the fund now paid into the registry of this court, pursuant to the order of this court entered upon the petition of interpleader herein, by said trust company; that he and the said Frank possessed and owned the said account as joint tenants, and that the same was their property as such; and that no person, other than he, now has any right, title or interest in or to said fund or any part thereof.

"Wherefore, he prays the judgment of this court awarding him the said fund and the interest thereon and his costs herein expended, and for all other proper relief."

Defendant administrator, Otto A. Hampe, filed the following interplea:

"Comes now the defendant, Otto A. Hampe, and states that he is the duly appointed, qualified and acting administrator of the estate of Caroline B. L. Frank, deceased; that on or about the 26th day of August, 1924, he took charge of said estate and found among the personal effects of said decedent a pass book in the Mississippi Valley Trust Company in the name of Caroline B. L. Frank and S. S. Smith, and that the balance on hand at that time was $17,550.32.

"Defendant Hampe further represents that said Caroline B. L. Frank was blind at the time of her death, and had been for a period of more than twelve years, and that because of this fact she appointed defendant S. S. Smith as her agent.

"Defendant further represents that defendant, S. S. Smith, has no interest in this fund, and that he admitted to the agents and servants of this defendant that he was merely acting as agent for Caroline B. L. Frank.

"Wherefore, he prays judgment of this court awarding him the said fund and the interest thereon, and his costs herein expended, and for all proper relief."

Defendant Sidney S. Smith filed answer to the interplea of defendant Otto A. Hampe, administrator, denying generally the allegations of said interplea. No other or further pleading was filed by defendant Otto A. Hampe.

The cause was tried upon the foregoing pleadings to the circuit court, without the aid of a jury, resulting in a judgment in favor of defendant-interpleader Sidney S. Smith, and against defendant-interpleader Otto A. Hampe, administrator, and awarding the fund in controversy to defendant Smith, as the legal owner thereof, from which judgment the defendant Hampe, administrator, has appealed to this court.

The evidence tends to disclose the following facts:

Caroline B. L. Frank opened a savings deposit account with plaintiff Trust Company, in her own and individual name, on March 21, 1911, under the number 64,430, by depositing the sum of $500, she then being identified to the officers of the Trust Company by defendant Smith. In the following year, 1912, the said savings account, upon the written request of Mrs. Frank, filed with plaintiff Trust Company, was made a joint account in the names of "S. S. Smith or Mrs. Caroline B. L. Frank," and the plaintiff stamped in purple ink with a rubber stamp upon its ledger sheets, and upon the pass book, evidencing said account, the words, "Either or the Survivor to draw." The rules and regulations of plaintiff Trust Company required the pass book evidencing said account to be presented whenever deposits or withdrawals were made. Only two withdrawals from the account were made from March 21, 1911, the date of the opening of the account, until August 26, 1924, the date of Mrs. Frank's death; the first withdrawal was made on December 27, 1911, before the account was changed to a joint account, in the sum of $3400, the withdrawal order upon the plaintiff Trust Company then being signed and presented in person by Mrs. Frank; and the other withdrawal was made on July 1, 1918, in the sum of $80, the withdrawal order upon the plaintiff Trust Company then being signed and presented in person by defendant Smith. Some ninety-four deposits were made and credited on said account between the date of the opening of the account and the death of Mrs. Frank. Interest was credited upon said account semiannually by plaintiff Trust Company. At the time of Mrs. Frank's death, the account aggregated $17,550.32, inclusive of accumulated interest. A signature card was signed by Mrs. Frank when she opened the savings account. At the time the account was changed from an individual to a joint account, Mrs. Frank signed a written request to the Trust Company that Smith's name be added to the account, at which time Smith also signed a signature card. The original request, and the respective

signature cards of Mrs. Frank and Smith, were produced by plaintiff at the trial and offered in evidence by defendant Smith, and the signatures of Mrs. Frank and Smith thereon were identified by an officer of the Trust Company. Photographic copies thereof are in the record before us, and we append the same hereto as a part of our opinion.

**Either or the Survivor to draw.**

Subject in every respect to regulations of MISSISSIPPI VALLEY TRUST COMPANY, and all changes thereof governing savings deposits.

64430 Sign Here

Caroline B. L. Frank

Residence

Occupation

Employer

Age                    Birthplace

Father's Name

Mother's Maiden name

Name of Husband or Wife

MAR 21 1911                    Identified by

Date Opened

---

I desire the name of

to appear on Pass Book No.

OF THE

## MISSISSIPPI VALLEY TRUST CO.

### SAVINGS DEPARTMENT

making the account payable to either or the survivor.

New Signature    S. S. Smith

Depositor

Name Added and Signature Examined by

Identified by

---

**Either or the Survivor to draw.**

Subject hereby made to regulations of MISSISSIPPI VALLEY TRUST COMPANY and all changes thereof governing savings deposits.

Sign Here ×    S. S. Smith    9195

Residence                    Otel

Occupation    Conductor

Employer

Age                    Birthplace    Effingham Co. Ill

Father's Name

Mother's Maiden name

Name of Husband or Wife    Mary

Date Opened                    Identified by

Defendant Sidney S. Smith testified: "My name is Sidney S. Smith, and I am the S. S. Smith referred to in this case. I am 62 years old, and reside at Indianapolis, Indiana, and have a wife and family there. I am a conductor in the employ of the Pennsylvania Railroad, running between St. Louis and Indianapolis, and have been employed by that company continuously for more than forty-five years last past, and during the greater part of that time I have been a conductor. As such conductor I have been running into St. Louis every few days, during which trips I would remain one or more days and nights here. Mrs. Caroline B. L. Frank lived in St. Louis, at 1508 Pine Street, near the Union Station, with a negro man and his wife in the house as servants, for many years. Mrs. Frank had three or four roomers, usually railroad men, of whom I was one. I was not related to her in any way. I first met her about twenty-six years ago, when I took a room at her home, where I then began to stay during my trips in St. Louis, and I continued to stay there (except from 1903 to 1908, when I was away) until her death on August 26, 1924. She was 74 years old on July 16, 1924, her birthday anniversary. She lived a very secluded life and appeared to have few friends in St. Louis, where she came alone to reside some thirty years ago. The only relatives I have ever heard her say she had were several distant cousins living in Indiana, Arkansas and California, with whom she seldom communicated, so she said. She was a very intelligent woman. Soon after I began boarding at her place we became friends. Her eyesight was not good, and I frequently read the papers to her in the evenings, during the last six years of her life. In about 1908 one of her eyes was bad, a cataract having formed on it, and she once stated she was blind in that eye. After that she had an operation performed and the cataract was removed, but her sight in that eye did not seem to be much improved, if any. With the aid of glasses, however, she was able to make out reading matter and the numbers on paper money and the like during all the time I knew her. About six years before she died, however, her eyesight became worse and she did no more reading, and after that time when I was in St. Louis I would read some of her correspondence to her. On a few of these occasions the letters were from her relatives, and I read them to her and answered them for her. During all the time I knew her I would assist her in some of her business transactions and occasionally do errands for her. During 1912 she was able to read even a newspaper. On numerous occasions she detailed to me her life history, and showed me clothing, articles of jewelry that seemed to be of large value, and pieces of old furniture and laces connected with her younger years. She lived mainly in the past during all the time I knew her. In 1911, at her request, I assisted her in opening a savings account at the Mississippi

Valley Trust Company, in her name, with $500 that was her money. That is the account referred to here today. The following year that account was changed to be a joint account, in her name and my name, as is shown by the papers produced here in court, by her and me. From that time until her death money was deposited in that account by her and me. Some of the deposits I made were with her money and some were with my money. The only withdrawal from the joint account was that of $80 by me on July 1, 1918. She usually had possession of the pass book, except when I was using it at the Trust Company, and at the time of her death it was in her possession. I was then in the Northwest, on a vacation from my railway duties. The withdrawal of $3400 on December 27, 1911, was by her to purchase a house as an investment. She asked my opinion as to the desirability of that investment, and I advised her that it appeared to be a good investment and assisted her in the procedure connected with making it. I have never admitted or stated to Mr. Hampe or anyone else that I had no interest in this account, nor that I acted as Mrs. Frank's agent, nor that all the money deposited in the account was hers and none of it mine, nor that she was almost totally blind, nor that I transacted practically all of her business for her. I deny that I ever made any such statements or admissions."

Defendant Otto A. Hampe testified: "I am Public Administrator of the city of St. Louis and, as such, took possession of the estate and effects of Caroline B. L. Frank after she died in St. Louis, among which effects was the savings-account pass book involved in this case. The defendant Sidney S. Smith came to my office after I had assumed charge of Mrs. Frank's estate and we discussed this savings account. He stated to me that all the money deposited in that account was Mrs. Frank's money and that he had never deposited any of his own money therein. He also stated that Mrs. Frank for many years had been almost totally blind, and that he had transacted practically all of her business and affairs for her."

Witness Sewall Smith testified: "I am a clerk in the office of, and under, Public Administrator Otto A. Hampe. I was present when Mr. Hampe and defendant Sidney S. Smith discussed the savings account. I have heard Mr. Hampe's testimony as to statements made by Sidney S. Smith. I was present and heard Sidney S. Smith make those statements as testified to by Mr. Hampe."

Witness James A. Reid, an employee in the savings department of plaintiff Trust Company, testified: "I was in the employ of the Mississippi Valley Trust Company in the savings department until about 1915. I know Mr. Smith, the defendant in this case. I knew Mrs. Frank. While I was connected with the trust company, I knew them both as customers of the savings department. The signatures on the three cards in this case are known to me to be their signatures.

While Mrs. Frank would sometimes come to the trust company, Mr. Smith was seen at the trust company more often by me. When I last saw her at the trust company prior to 1915 she was able to read."

The foregoing constituted all of the evidence in the case.

It is contended by the appellant administrator of Mrs. Frank's estate that the burden of proof rests upon the respondent Smith to establish his claim of ownership to the fund in controversy, and that Mrs. Frank intended to create a joint tenancy in the fund; that such burden of proof is sustained only upon clear, unequivocal and convincing evidence, which character of evidence is wholly lacking herein; and that the evidence shows that a confidential and fiduciary relation existed between respondent Smith and Mrs. Frank, which cast upon respondent the additional burden of establishing that Mrs. Frank fully understood, comprehended and intended the legal effect of what was done by her, and that respondent, himself, acted in good faith, without fraud, imposition, undue influence or unfair dealing upon his part; wherefore, appellant urges that the finding and judgment of the trial court is not supported by the evidence or by the applicable rules and principles of law.

In 7 Corpus Juris, 640, it is said: "A deposit may be joint with the right of survivorship, and where such a deposit is made, the presumption is that the interest of the joint depositors is equal."

The rule is thus announced in 3 Ruling Case Law, 527, 528: "It is well established that a bank account may be so fixed that two persons shall be joint owners thereof during their mutual lives, and the survivor take the whole on the death of the other. In creating a joint bank account with right of survivorship, it is a matter of no importance that the particular terms 'joint ownership' and 'joint account' are not used; the controlling question is whether the person opening the account intentionally and intelligently created a condition embracing the essential elements of joint ownership and survivorship. No particular formula is required, and courts will be controlled by the substance of the transaction rather than by the name given it. Within this rule a bank account payable to the order of husband or wife, the balance at the death of either to belong to the survivor, constitutes an agreement which remains in force after the death of one spouse, and justifies the payment to the other, as survivor, of the moneys remaining on deposit."

A like state of facts was involved in the case of Commonwealth Trust Co. v. Reagan, 193 Mo. App. 290, 305 et seq., wherein a savings-bank depositor requested that his individual account be made a joint account, in favor of himself and another, and a signature card was sent to such other, who signed and returned it to the bank, and the account was thereupon made subject to withdrawal by either, or the survivor, and it was ruled by the St. Louis Court of Appeals

that there was a completed gift or donation of a joint interest in the account, entitling the donee to the fund, upon surviving the donor, although the donor had at all times retained the pass book, evidencing such account, which, under the rules of the bank, was required to be presented when any amount was withdrawn from the account. After reviewing a multitude of juristic authorities on the subject, and while admitting some contrariety of opinion in the authorities reviewed, REYNOLDS, P. J., speaking for that court, announced the following conclusion: "In the case at bar there was a completed transaction; a donation of the fund; a transfer of the account on the books of the bank from the name of the depositor to himself and another, by direction of Fitzpatrick (the individual depositor). Although Fitzpatrick retained possession of the pass book and had the right during his life to withdraw the whole fund, he did not do so, but left a large amount standing to the joint account when he died. The transaction was accepted, acquiesced in and acknowledged by the savings bank, here the Trust Company. The fact of transmission of the card by the Trust Company, by direction of Fitzpatrick, to Mrs. DuMontimer and her subsequent return of it to the Trust Company with her signature and identification data filled in, evidenced not only her knowledge of the transaction but acquiescence in it; acceptance by her. Without undertaking to compile the multitude of authorities on the subject, or to reconcile them, our conclusion is that this was a completed donation, by which the fund became a joint fund, passing to the survivor on the death of one of the parties to it, and that the purpose of the donor was not defeated by his retention of the pass book."

Respondent herein asserts that, independently of the evidence herein, and of the foregoing ruling and conclusion of the St. Louis Court of Appeals applied to like facts, the judgment below is supported by an applicable statute of this State, which was enacted by the General Assembly in 1915 (Laws 1915, pp. 190, 191; Sec. 11840, R. S. 1919), and which provides: "When a deposit shall have been made by any person in the name of such depositor and another person and in form to be paid to either, or the survivor of them, such deposit thereupon and any additions thereto made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to either during the lifetime of both, or to the survivor after the death of one of them; and such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to said trust company for all payments made on account of such deposit prior to the receipt by said trust company of notice in writing signed by any one of such

joint tenants not to pay such deposit in accordance with the terms thereof.''

An identical statute (Sec. 11779, R. S. 1919), applicable to banks of deposit, as distinguished from trust companies, was very recently construed, and the history and derivation thereof was reviewed, by the St. Louis Court of Appeals in Ball v. Mercantile Trust Co., 220 Mo. App. 1165, 1172, 297 S. W. 415, a case quite similar upon the substantive facts to the case at bar, wherein BECKER, J., speaking for that court, said: ''The portion of the said section of the statute quoted above was, prior to its enactment in this State, in force in the State of New York, in which State it was enacted in 1907, as amendment to Section 114 of the Banking Laws of 1892 (Laws 1906, Chap. 689), and appears as Section 249, paragraph 3, page 684, of the Consolidated Laws of New York, and the same section *in haec verba* was incorporated into the statutes of Missouri during the legislative session of 1915, and now appears as Section 11779, Revised Statutes 1919. Under the accepted rule in this State, in the construing of statutes of another state, adopted by this State, the construction of the statute in the foreign state before its adoption here is controlling after its adoption. [State v. Conway, 241 Mo. 271; Yost v. Ry. Co., 245 Mo. 219; Joplin Supply Co. v. Smith, 182 Mo. App. 212; State ex rel. Crowe v. Carruthers, 204 Mo. App. 209.]'' (Then follows a review of the New York cases construing the like statute of that state) and the opinion continues: ''The reasoning and the conclusion arrived at in the cases above quoted appeals to us as sound and it is our view, and we so hold, that under the provisions of our statute, quoted supra, the deposit in the bank in the form in which it was made was sufficient in the first instance to establish in this action a joint ownership in the fund with all the incidents attached to such ownership, including the attendant rights of survivorship therein. Also, that the depositors or their representatives, as between themselves, may be permitted to introduce other competent evidence that the actual agreement, if any, as between the parties was that title to joint ownership was not intended to be established nor in fact conferred. . . . In light of all the facts and circumstances surrounding the creation of the fund in question, we have come to the conclusion that the deposit in the bank in the form in which it was made, and under the evidence adduced in the case, must be held to have created a joint ownership of the fund with the attendant right of survivorship therein, and that the trial court properly decreed the defendant, Catherine M. Prendiville, entitled to the fund.''

It is argued, however, by appellant herein that the foregoing statute (Sec. 11840, R. S. 1919), having been enacted in 1915, subsequently to the change of the account in controversy from an in-

dividual to a joint account, can have no retroactive force or effect, and, therefore, that such statute is inapplicable in the instant case. The force and effect of such statutes is discussed in a commentary found in 48 American Law Reports 194, 195, wherein the commentator, citing ample authorities in support of his conclusion, says: "A statute has been enacted in some jurisdictions, providing that when a deposit shall be made in any bank or trust company by any person in the name of such depositor or any other person, and in form to be paid to either or the survivor of them, such deposits thereupon, and any addition thereto made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to either during the lifetime of both, or to the survivor after the death of one of them, and such payment, and the receipt or acquittance of the one to whom such payment is made, shall be a valid and sufficient release or discharge to said bank for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposits in accordance with the terms thereof. Under such a statute it has been held that, where there is a joint deposit by a person of his funds in the name of himself or another, either, or the survivor, a presumption arises that the deposit became the property of the depositors as joint tenants, and, in the absence of competent evidence to the contrary, actually fixes the ownership of the fund in the persons named as joint tenants with the attendant right of survivorship. Obviously, where the presumption is aided by the evidence, the right of the survivor is still clearer. . . . There is some dispute as to whether the statute applies to accounts opened before the adoption of the statute. In so far as such statute announces a rule of evidence, it applies to deposits made before, as well as after, its enactment."

We are inclined to the view that the above quoted statute announces a rule of evidence (and such seems to be the view of the St. Louis Court of Appeals expressed in the Ball case, supra); wherefore, the statute is applicable to accounts opened before the enactment of the statute, and, under the construction given to such statute by respectable judicial authorities, a presumption arises thereunder that the deposit became the property of the depositors as joint tenants or owners, with the attendant right of survivorship, at least in the absence of competent evidence to the contrary.

But regardless of the statute and its applicability herein, we are of opinion that respondent sustained the burden of proof devolving upon him, and that there is substantial evidence that Mrs. Frank, the deceased depositor, intended that the deposit in controversy should become the joint account of herself and Smith, subject to their

joint ownership and control, and the absolute ownership thereof should pass to and vest in the survivor upon the death of either. The transaction appears from all the evidence to have borne the absolute and complete ratification of Mrs. Frank during the several years of its continuance, and to say the least, is strongly indicative of her intention to make a completed gift and donation of the account, during her lifetime, to the respondent Smith, who acquiesced in the transaction and accepted the gift by his act of signing the signature card and delivering the same to plaintiff Trust Company. There is not the slightest evidence herein of fraud, undue influence, deception or unfair dealing upon the part of respondent, or that he took any wrongful advantage whatsoever of the long friendship which apparently existed between Mrs. Frank and himself. Neither is there any clear, convincing or conclusive evidence that respondent acted in a fiduciary capacity as the agent of Mrs. Frank insofar as the particular transaction is concerned. On the other hand, the evidence tends strongly to show that Mrs. Frank had no near relatives or kindred with whom she was in close and intimate communication or contact during her lifetime, and that respondent rendered many services and kindnesses to Mrs. Frank during the last years of her life, when she was aged and afflicted with failing eyesight, and, by reason thereof, needed such aid and assistance as respondent, under the evidence, willingly rendered her. No doubt Mrs. Frank entertained the view that she was morally, if not legally, obligated to respondent for such ministrations and kindnesses, and freely and willingly intended to reward respondent therefor as the result of the transaction in controversy. Although respondent was authorized and empowered to withdraw the whole, or any part, of the joint account from and after the year 1912, the evidence shows that he only withdrew from the account the paltry sum of $80 during the several years of the continuance and existence of the joint account.

We are of opinion that the judgment *nisi* should be affirmed, and it is so ordered. *Lindsay, C.,* concurs; *Ellison, C.,* not sitting.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur, except *Gantt, J.,* who concurs in the result.