C. R. MALLOY and ANNA M. MALLOY, Appellants, v. DR. C. H. JONES. —No. 38686.—175 S. W. (2d) 776.

Division One, December 6, 1943.

*W. H. Meredith* and *Phillips & Phillips* for appellant.

*Wm. T. Powers* for respondent.

CLARK, P. J.—Suit to set aside a deed and contract for the sale of real estate and personal property. The decree was for defendant and plaintiffs appeal.

The petition alleges that the contract and deed are not based on a consideration, are inequitable, were obtained by duress induced by threat of a civil suit, and do not express the true agreement of the parties in that they describe certain promissory notes which plaintiffs did not agree to assign and transfer; and that defendant failed to execute a deed of trust and deliver same to plaintiffs as promised.

The petition also alleges that plaintiffs entered into a verbal agreement whereby they rented their Wayne County farm to one L. M. Church for five years from March 1, 1941, at an annual rental of $500.00, and Church moved to the farm in September, 1940, and has had possession since; that this lease was acknowledged and recorded in February, 1942; that in March, 1941, defendant, with full knowledge that the farm was rented to Church, came to the home of plaintiffs in Jasper County and falsely and fraudulently represented to them that Church would be unable to carry out his contract and thereby induced plaintiffs to lease the farm to defendant on the same terms upon which they had agreed to rent it to Church, and that this was done by defendant with the fraudulent design to get possession of the land and later cheat plaintiffs out of it.

Defendant's answer admitted the execution of the contract and deed and denied generally and specifically all other allegations of the petition. The answer further states "that the plaintiffs both well knew that the contract was not a note and deed of trust, and further avers that the plaintiffs at the time preferred a contract to a note and deed of trust, on account of, as stated by them, that taxes might be assessed on a note against them, and that under the contract it was possible that no taxes would be assessed against them; but the defendant hereby offers to make, execute and deliver to the plaintiffs a note or notes in the amount and payable at the same time as payments are due as expressed in the contract made between the parties, said notes to bear interest from maturity at the legal rate of interest, and to execute a deed of trust to secure said note or notes, provided plaintiffs will dismiss this lawsuit with prejudice and secure immediate possession of the real estate for defendant, and pay all costs of this suit."

After a trial without a jury the court found the issues for defendant and against the plaintiffs and "ordered and decreed that defendant and his wife execute their promissory note for $12,000.00 secured by deed of trust on land and chattel mortgage [778] on personal property described by contract payable as prescribed by contract, defendant at the time by leave of court tenders payment of $1,000.00 as deposit. It is ordered by the court that plaintiffs' bill be dismissed".

The plaintiffs are husband and wife. At the time of the trial Mr. Malloy was 76 and his wife 67 years of age. His vision is somewhat impaired, but he can sign his name. Mrs. Malloy has been in failing health for several years. She has a common school education and can read and write. The farm in question is located in Wayne County. Plaintiffs resided on the farm for many years until September 15, 1940, when they purchased land in and moved to Jasper County. At that time they entered into an oral agreement purporting to lease the farm to one L. M. Church for a period of five years from March

1, 1941. Later a five year written lease was prepared which was acknowledged by Church on October 28, 1941, by the plaintiffs on February 16, 1942, and filed for record in the recorder's office on February 19, 1942. This lease provided an annual rental of $500.00, payable in advance, and plaintiffs agreed to leave all farming tools and machinery on the place for the use of Church during the life of the lease. Failure to pay rent when due would entitle the lessors to immediate possession. On March 17, 1941, the plaintiffs and defendant entered into a written contract, duly signed and acknowledged, whereby the plaintiffs agreed to lease the same land to defendant, for the same period and on the same terms as to rental and the use of farming tools as later specified in the lease to Church. Defendant, when he procured his lease, knew that plaintiffs had orally agreed to lease the same property to Church, but thought the agreement with Church was invalid. One of the plaintiffs testified that defendant procured his lease by representing to them that Church would be unable to carry out his contract and they would lose the rent. Church had given them a note for the first year's rent, which has not been paid. The record is silent as to when this rent note became due, but it must have been before March 14, 1941, because on that date plaintiffs wrote defendant that Church "wants us to take a lien on the crop for what he owes us. As much as I'd like to help him all I can, I don't think we can do that, I feel like the best thing for him and us is to let you finance him. Go to see him and make a deal with him. As we want this matter cleared". Three days later plaintiffs leased the land to defendant. The next day after defendant received his lease, plaintiffs wrote him. This letter is not in the record, but apparently it indicated that plaintiffs desired to let Church go on with his contract. Defendant refused to give up his lease in a letter dated March 21, 1941, and stated that he would make satisfactory arrangements with Church, either by subrenting to him or by farming the land with him. He failed to make such arrangements and, at the time of the trial of the instant case, had two suits pending against Church, one to recover possession of the farm and the other to recover on the rent note which defendant claims to have purchased from plaintiffs. In September, 1941, plaintiffs wrote defendant asking him to cancel his lease as they wanted to sell the farm. Defendant replied that he would not give up the lease, but suggested that they sell the farm to him and "that would take care of the lease contract you gave me". On January 27, 1942, defendant went to plaintiffs' home in Jasper County and spent a considerable part of the day in negotiating with them for the purchase of their farm. Mrs. Malloy, one of the plaintiffs, testified that defendant induced them to make a deal with him by threatening to sue them in connection with the lease which they had given him. Defendant denied this, and Mr. Malloy, the other plaintiff, also testified no threats were made by defendant. Late in

the afternoon the parties reached some kind of an agreement and defendant went to town and had a contract and deed prepared. Accompanied by a lawyer and notary, defendant brought these papers back to plaintiffs' home, the lawyer read them to plaintiffs and they signed and acknowledged them, without any argument and with very little discussion. The contract, a copy of which was left with plaintiffs, provided for the sale by plaintiffs to defendant of the farm, all farm machinery, tools and household goods on the place, two notes aggregating $1,050.00 and two accounts aggregating $150.00, for all of which defendant agreed to pay $12,000.00 at the rate of $1,000.00 per annum without interest. The deed is in the customary form containing usual covenants of warranty and reciting a consideration of "one dollar and other valuable considerations".

The testimony as to the value of the farm varied from $8,000.00 to $20,000.00, the latter [779] figure being given by Mr. Stricklin, only son of Mrs. Malloy and stepson of the other plaintiff. Another witness for plaintiff placed its value at $10,000.00 and witnesses for defendant said it was worth from $8,000.00 to $9,000.00. The farm is assessed for taxes at a valuation of $6,000.00. There was no very definite evidence as to the value of the notes and personal property included in the contract although Mr. Malloy, one of the plaintiffs, valued the personal property, exclusive of the notes, at $1,000.00.

The foregoing is a brief statement of the material evidence. It is apparent that the contract and deed cannot be set aside for inadequacy of consideration alone. Under the evidence the purchase price seems to be about the full value of the property; yet the terms of the contract call for a careful consideration of all the circumstances surrounding the transaction. The contract affords no security for the payment of the purchase money other than the personal word of defendant. If he defaults plaintiffs can sue him for only the installment then due, for there is no acceleration clause. Defendant testified that he is worth $25,000.00 above his exemptions and there was no testimony to the contrary. Both plaintiffs testified that the promissory notes were not to be included in the sale and that defendant agreed to give them a deed of trust to secure the purchase price. They admit the contract was read to them, but say they did not understand it. Defendant denied that he agreed to execute a deed of trust, but in his answer he offers to execute a deed of trust on certain conditions. The trial chancellor, while finding for defendant, ordered him to execute a deed of trust without any conditions attached.

At the time the contract and deed were actually signed both plaintiffs admit that nothing was said or done which would indicate that the instruments were executed under duress. Mrs. Malloy says that the inducement came before that; that during the same day and until shortly before the papers were prepared and brought to them defendant had frequently threatened them with litigation concerning

his lease unless they agreed to sell the place to him, and that this caused them to do so. Defendant denies that any such threats were made and is corroborated by Mr. Malloy, one of the plaintiffs.

The parties have cited cases pro and con as to whether threat of a civil suit can amount to duress. It is unnecessary for us to discuss the matter or review the cases cited, for we can not determine from the record that any threats were made. True, defendant refused to give up his lease unless he became the purchaser of the land. Mrs. Malloy says he procured this lease by falsely representing that Church would be unable to carry out his verbal agreement, but the letter heretofore quoted shows that the plaintiffs were the first to question the financial ability of Church and to call on defendant to help him. At the time plaintiffs executed the lease to defendant, both they and the defendant apparently believed that the Church agreement was invalid. Whether they were induced to this belief by the fact that the agreement was oral or believed that it could be canceled for default in payment of the advance rent, is immaterial.

Under the modern doctrine there is no exact legal standard respecting the sufficiency of facts to produce duress. The question must be determined on the facts of each particular case on consideration of all surrounding circumstances, such as age, mental capacity, relation of the parties, etc. The final test is: Was one party to the transaction prevented from exercising his free will by the threats or wrongful conduct of the other and the contract obtained by reason of such facts? [17 C. J. S., p. 533, sec. 175.]

Mrs. Malloy testified that the promissory notes and the other personal property were not to be included in the sale to defendant. Mr. Malloy testified that the notes were not to be included, but that they agreed to sell the farm and personal property for the consideration stated. The lawyer who prepared the contract and the notary who took the acknowledgments both testified the contract was read to plaintiffs and that they made no claim that it failed to express the true agreement. This is admitted by both the plaintiffs. There was no testimony that either plaintiff was of unsound or even weak mind, although Mr. Stricklin, son of Mrs. Malloy and stepson of Mr. Malloy, attempted to testify that they were incapable of transacting business. This witness lives outside this state and it was not shown how frequently he had seen the plaintiffs in recent years. He was a lay witness, and admitted that he based his opinion entirely on the terms of the contract involved in this suit. His opinion was properly excluded.

The contract specifically describes the notes and personal property. Plaintiffs, after it was read to them, signed the contract without protest. They cannot now vary its terms by parol evidence in the absence of proof of some exception to the parol evidence rule and the burden was upon them to prove such exception. [See discussion in 32 C. J. S., p. 830, sec. 910 et seq.]

From a careful consideration of all the testimony we cannot say that there is substantial testimony of fraud, duress, undue influence, confidential relation, or inadequacy of consideration. The plaintiffs seem to have cast the first doubt on the ability of Church to comply with his oral lease. They also were the first to suggest that they desired to sell their farm. We cannot say that the evidence shows fraud or duress on the part of defendant either in procuring the lease or the deed. The one circumstance which has seriously challenged our consideration is the failure of the contract of sale to provide security. As to the reason for this, the testimony of plaintiffs and defendant is in sharp conflict, but plaintiffs have offered no satisfactory explanation as to why they did not demand a deed of trust when the contract and deed were read to them. The mere fact that plaintiffs may have made an improvident contract does not alone afford ground for equitable relief. [21 C. J., p. 112, sec. 87.] We have read the cases cited by respondent on this point, the latest one being Hanson v. Neal, 215 Mo. 256, 114 S. W. 1079. They are clearly distinguishable from the instant case on the facts considered.

The inequity in the contract, arising from failure to give security for the payment of the purchase price, has been corrected in the decree. Whether that part of the decree would have been binding on defendant had he appealed, we need not decide. Not only has defendant failed to appeal, but states in his brief that he has complied with the decree by executing and delivering to the clerk of the trial court a deed of trust on the real estate, his wife joining therein, and a chattel mortgage on the personal property to secure the purchase money. Defendant also states that he has deposited with the clerk of the trial court the sum of $1,000.00 to be paid plaintiffs as the first installment on the contract. Thus defendant has recognized the decree as binding upon him.

The decree is affirmed and the cause remanded so that the chancellor may approve the form and wording of the deed of trust and chattel mortgage and order their delivery, together with the installment of purchase money, to the plaintiffs. All concur.