COMMERCE TRUST COMPANY v. HATTIE WATTS, Appellant, and GEORGE L. BIRLEW, Executor of the Estate of AMOS B. CRANDALL, Deceased, Respondent, No. 41762—231 S. W. (2d) 817.

Division One, July 10, 1950.

972

*Roy P. Swanson,* *Charles B. Blackmar* and *Blackmar, Newkirk, Eager, Swanson & Midgley* for appellant.

*W. Raleigh Gough* for respondent.

CONKLING, P. J.—Commerce Trust Company, a banking corporation (hereinafter called the Trust Company), having a sum

of money on joint deposit, filed its bill of interpleader in the Jackson County circuit court against Hattie Watts (hereinafter called appellant), and George L. Birlew, Executor of the Estate of Amos B. Crandall (hereinafter called respondent). In its bill the Trust Company prayed that those parties be required to interplead and that the court determine which of those parties "is entitled to receive payment" of the funds in the joint deposit in question. The cause was tried before the court without a jury. Judgment was rendered for respondent. Appellant took her appeal to the Kansas City Court of Appeals. That Court affirmed the lower court's judgment, 222 S. W. (2d) 937, but thereafter transferred the case to this Court. For reasons hereinafter stated we reverse the judgment entered in the circuit court.

The opinion of the Court of Appeals seems to correctly state the facts presented by the transcript. Appellant does not here contend the contrary. In the interest of brevity, and in view of our disposition of the case, it is not necessary to here fully restate the facts. Reference is made to the Court of Appeals opinion for other facts.

Amos B. Crandall was a locomotive engineer. He had no children. His wife had three sisters, Mrs. Birlew (wife of respondent), Mrs. Thayer and appellant. After Mrs. Crandall became ill in January, 1944, appellant, a nurse who lived in Topeka, Kansas, came to the Crandall home in Kansas City to help care for Mrs. Crandall. The latter died January 11, 1944. On February 21, 1944, Amos B. Crandall and appellant, Hattie Watts, went to Commerce Trust Company, in Kansas City, and opened a joint bank account in the names of both, payable to the survivor of them. In so doing they executed the following writing: "Amos B. Crandall and Hattie Watts hereby agree each with the other and with Commerce Trust Company of Kansas City, Missouri, that all sums heretofore or hereafter deposited by them, or either of them, with said Trust Company to their credit as joint depositors, shall be owned by them jointly with right of survivorship, and be subject to the check or order or receipt of either of them, or the survivor of them, and payment thereof shall discharge said Trust Company from liability to either, or the heirs, executors, administrator or assigns of either. Each of the undersigned does hereby authorize the other to endorse his or her name on all checks or other evidences of indebtedness, and authorizes said Trust Company to cash or purchase such instruments upon such endorsements, and does further authorize said Trust Company to deposit in said joint account, with or without endorsement, all checks and drafts made payable to the undersigned or either of them. The signatures hereto are the duly authorized signatures for the payment of funds or the transaction of other business in connection with said account and the undersigned agree to the conditions printed on the reverse side hereof. (Authorized

Signatures) /s/ Amos B. Crandall (A) /s/ Hattie Watts (B) Dated 2-21-44.''

The initial deposit of $600 (and later deposits of over $10,000) came from Crandall's funds. During Crandall's lifetime Mrs. Watts drew no checks on the account. Mr. Crandall kept the pass book in his possession. Out of the money in the joint account Crandall drew various sums, among them $3700 to pay for a home which he gave to Mr. and Mrs. Birlew and $4125 to purchase bonds. He gave respondent $2,000 in bonds. To Mrs. Birlew, Crandall gave $500 in bonds, and also left her $1000 in insurance. To Thayer Birlew, son of respondent and wife, Crandall gave $750 in bonds. To appellant, Crandall gave $500 in bonds and left her $2,000 in insurance. At the time of Crandall's death (April 18, 1945) there was a little more than $1600 in the account. Thereafter Mrs. Watts drew certain checks upon the account. The present balance in the account is $603.75.

Respondent's contention, as stated in his answer to the Trust Company's bill, was that the joint account was established by Crandall ''for the express purpose of convenience of the parties to pay obligations of Amos B. Crandall; that said Hattie Watts had no legal or equitable interest to the title of said funds.'' He also prayed judgment for the $603.75. There is no allegation and no evidence of fraud, undue influence, mental incapacity or fiduciary relationship. Appellant's answer set out the above agreement of joint deposit, alleged her ownership of the bank balance in question, and prayed judgment therefor against the Trust Company. The trial court found that appellant Watts, ''signed the authorization card at the request of Amos B. Crandall in order that she might be in a position to draw checks on the account for the accommodation of Crandall if he at any time was unable to do so; that it was not intended that defendant Hattie Watts should have any interest in said account and her only interest was that of being in a position to accommodate Amos B. Crandall in case of an emergency.''

In R. S. Mo. 1939 § 8070, Mo. R. S. A., it is, in part, provided, that: ''When a deposit (in a Trust Company) shall have been made by any person in the name of such depositor and another person and in form to be paid to either, or the survivor of them, such deposit thereupon and any additions thereto made, by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to either during the life time of both, or to the survivor after the death of one of them.''

This case brings before us the admissibility, under these circumstances, of certain parol evidence from which we assume the trial court found the account was one of convenience ''in order that she

(appellant) might be in a position to draw checks on the account for the accommodation of Crandall * * * (and) that it was not intended that defendant Hattie Watts should have any interest in said account." Respondent contends that parol evidence is not admissible to contradict, vary, explain or show an intention of the parties other than that stated by them in their above set out written agreement of February 21, 1944. Thus there is squarely presented for our consideration under these facts and under our statute, supra, the legal effect of the written agreement executed when the account was opened.

Missouri courts recognize that joint tenancies with rights of survivorship may be created in bank accounts. Mississippi Valley Trust Co. v. Smith, 320 Mo. 989, 9 S. W. (2d) 58, 63, Clevidence v. Mercantile Home Bank & Trust Co., 355 Mo. 904, 199 S. W. (2d) 1, Ballmann v. Kaimann, 360 Mo. 544, 229 S. W. (2d) 527, Bunker v. Fidelity Nat. Bank & Trust Co., 335 Mo. 305, 73 S. W. (2d) 242, Ball v. Mercantile Trust Co., 220 Mo. App. 1165, 297 S. W. 415. Our statute set out above fixes the interests of joint depositors as that of joint tenants and raises the "presumption of an intent to make an immediate gift." Ball v. Mercantile Trust Co., supra. See, also Beach v. Holland, (Ore.) 142 Pac. (2d) 990, 149 A. L. R. 866 and cases cited in the annotation. That Crandall retained the bank pass book in his possession is not material. Both Crandall and appellant had the right to make withdrawals and the mere possession of the pass book is not determinative. Each of them had an equal right to the possession of the book. Beach v. Holland, supra, Illinois Trust and Savings Bank v. Van Vlack, 310 Ill. 185, 141 N. E. 546.

Conceding that the above deposit agreement was a valid contract between the depositors and the bank, respondent contends "the parol evidence rule is inapplicable because the deposit agreement is neither a valid contract (as between the two depositors) nor a transfer of a present interest." We cannot agree to that contention. Appellant acquired definite rights under a contract between competent parties. She was the beneficiary of the contract and is entitled to enforce it. Kansas City Life Ins. Co. v. Rainey, 353 Mo. 477, 182 S. W. (2d) 624. Such contracts are not solely for the protection of the bank. Under the circumstances here that writing did more than raise a mere presumption. It actually fixed the ownership of the account in the persons therein named (Crandall and Mrs. Watts) with attendant rights of survivorship. Annotation, 149 A. L. R. 879, et seq., In re Rehfeld's Estate, 198 Mich. 249, 164 N. W. 372. We do not find that this exact question of whether such a writing is a valid contract as between the depositors has been either raised or ruled in Missouri but there is eminent authority that these written joint deposit agreements are contractual in nature and effect and that each of the joint depositors who sign them acquire rights

therefrom which the courts will enforce. Matthew. v. Moncrief, 135 Fed. (2d) 645, Beach v. Holland, supra, Sage v. Flueck, 132 Ohio St. 377, 7 N. E. (2d) 802, Kennedy v. Kennedy, (Cal.) 146 Pac. 647, 5 Zollmann, Banks and Banking, Perm. Ed., p. 244, § 3223. We rule that this joint deposit agreement was a binding valid contract between the parties signatory thereto. The provision in the written contract of deposit which gave the appellant the unlimited right of withdrawal of the money in the account is donative in nature and evidenced the intention of Crandall to make a gift in praesenti. The contract itself supplies all the formalities necessary to render the gift effective.

The courts have decided many cases involving joint bank accounts. See cases above cited, and, 18 Mo. R. S. A. pp. 216, 217, 218, 286, 288, 48 A. L. R. 189, 66 A. L. R. 881, 103 A. L. R. 1123, 135 A. L. R. 993, 149 A. L. R. pp. 856 to 898. See also cases cited in footnotes to Matthew v. Moncrief, supra. Many states have statutes similar to ours, supra. Few of the cases, however, have squarely considered whether such a contract of joint deposit as is now before us is an exception to the rule that parol evidence may not be received to contradict, vary or show an intention contrary to that expressed in the joint deposit contract. We do not find that any Missouri case, under the circumstances now of record before us has considered this precise question.

The formalities of such a contractual situation are of importance. It does not appear that Crandall had more than one bank account. Crandall and Mrs. Watts went together to the bank. The above unambiguous contract was there executed by them. It is one complete integrated contract. 1 Restatement of the Law of Contracts, § 228. They reduced their engagement to writing. Their entire agreement is set out therein. Their intention is clearly evident therefrom. That no one may be heard to say that an actual agreement made by the parties is not reflected in their unambiguous written contract, the courts, by the application of the parol evidence rule, have uniformly held that, in the absence of fraud, duress, mistake or mental incapacity, an integrated unambiguous contract may not be varied, and a new and different contract substituted by parol evidence. Employer's Indemnity Corp. v. Garrett, 327 Mo. 874, 38 S. W. (2d) 1049, Malloy v. Jones, 351 Mo. 1211, 175 S. W. (2d) 776. The agreement of the contracting parties merges in their written instrument and (except in certain instances not appearing here), is not subject to be varied by oral testimony or extrinsic circumstances. The parol evidence rule is one of substantive law. It is not a rule of evidence. In a proper case for the application of the rule, even if the parol evidence be received without objection, it must be ignored. The writing itself becomes and is

the single and final memorial of the understanding and intention of the parties. 32 C. J. S. p. 784.

Under the instant circumstances is there any sound reason for ruling that the above set out contract of joint deposit should constitute any exception to the parol evidence rule? We do not think so.

Chief Justice Vinson, then a Judge of the United States Court of Appeals for the District of Columbia, considered this precise question in a well-reasoned opinion in Matthew v. Moncrief, supra, and there examined the cases, their "logic, sound principle and good public policy." It was there held that the determinative considerations were, (1) was there written language expressing an intention to create a joint account by a present transfer, or was the name of the donee merely added to the deposit card, (2) was the writing establishing the joint account signed by both parties, and did it contain a survivorship clause, and (3) are the surviving depositor's rights attacked because the mechanics to create a gift are lacking or because it is claimed the arrangement was merely one of convenience. The criteria held determinative in that case appear in the instant record. In ruling that case, applying the parol evidence rule and announcing the weight of authority, that court there said: "* * * the courts have agreed that the question of the intention of the donor is material, but they have held that when such intention is expressed in a written instrument which says, in plain terms, that the deposit is the joint property of both, and that it is to go upon the death of either to the survivor, such an expression of intention is conclusive, and preclusive of all parol contradiction, except upon the grounds of fraud or mistake. We believe this to be a proper application of the parol evidence rule."

In 9 C. J. S., Banks and Banking, § 286, it is said: "The intent of the parties may indicate and determine the right of survivorship. Where no other evidence of intent is available, the form of the deposit may control; but when such intent is evidenced by a written agreement, the question of intention ceases to be an issue and the courts are bound by the agreement." In In Re Murdoch's Estate, (Iowa) 29 N. W. (2d) 177, the Supreme Court of Iowa considered a similar contract between joint depositors and there said: "We view the present writings, so-called signature cards, in the same light: Under our rules of construction, in the absence of a plea of fraud, duress or mistake, we are bound by the plain and expressed terms of the agreement. Extrinsic evidence tending to change this expressed intent, is not competent." See also, Illinois Trust and Savings Bank v. Van Vlack, supra, and Annotation, 149 A. L. R. 862, 865, and cases there cited.

Examination of the cases indicates that heretofore the Missouri courts have not been asked to consider these joint bank account

cases from the standpoint of the formality involved in opening such accounts. There was no formal contract at all in Mississippi Valley Trust Company v. Smith, supra, Clevidence v. Mercantile Home Bank & Trust Co., supra, Bunker v. Fidelity National Bank & Trust Co., supra, and Ball v. Mercantile Trust Co., supra. The question instantly before us for ruling was not raised by appellant in Ballmann v. Kaimann, supra, and that case presented facts and issues not before us here which clearly distinguish it from the instant case. As to other cases relied on by respondent. Ambruster v. Ambruster, 326 Mo. 51, 31 S. W. (2d) 28, did not involve the validity of the joint account, but sought to establish a trust. The applicability of the parol evidence rule was not raised. In Schnur v. Dunker, (St. L. Ct. of App.) 38 S. W. (2d) 282, the surviving depositor admitted she held the funds as a fiduciary. The parol evidence rule was not there involved. In Melinik v. Meier, (St. L. Ct. of App.) 124 S. W. (2d) 594, it does not appear that there was any contract between the parties establishing the joint account and the application of the parol evidence rule seems not to have been before the court. In In Re Geel's Estate, (St. L. Ct. of App.) 143 S. W. (2d) 327, there is no indication the joint account was established by written contract. In Mercantile Bank v. Haley, (St. L. Ct. of App.) 179 S. W. (2d) 916, it does not appear the joint deposit ▆▆ was established by contract, but that an individual account was merely ''changed over'' by instructions to add the name of the original depositor's brother-in-law. It was so limited, however, that the brother-in-law could not withdraw from the account until after the death of the original depositor. Those facts distinguish the case. Those cases are no authority upon the question instantly before us.

The cases do not indicate that heretofore the Missouri courts have approached these joint bank account cases from the standpoint of the formality involved in opening such accounts. They may be opened in different ways. Banking practices seem to vary with different banks. Some of the cases show one method of opening joint accounts. Other cases show other methods. Frequently the surviving co-depositor's name is added upon mere oral direction of the original depositor. In few instances was the formality of the execution of this character of contract observed. As to these facts, however, where this contract was executed which so unequivocally and unambiguously reflects the entire engagement of the parties, and where the intention of the parties appears so crystal clear from the words they use in the contract, we cannot escape the conclusion that this contract and these facts present no recognized exception to the parol evidence rule. If no written contract had been executed, and if the intention of the parties was determinable only by parol evidence, we might well have a wholly different situation from that shown by this record. But we cannot close our eyes to the formalities observed here nor can we

ignore the intent of the contracting parties as they themselves expressed it.

Under the circumstances here neither parol evidence nor extrinsic circumstance was admissible to contradict or vary the intention of the parties expressed in their solemn contract. It follows, therefore, that the judgment entered in the circuit court must be reversed with directions to enter judgment for appellant. It is so ordered. All concur.